Steven W. O'Reilly, SBN 141741
Email: steveslaw110@msn.com
12304 Santa Monica Boulevard, Suite 300
Los Angeles, California  90025-2593
Telephone:  (310) 560-0800
Facsimile:   (310) 933-6980
Attorney for Plaintiff,
Linda Veerkamp

UNIYED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Linda Veerkamp | CASE NO.: 2:25-cv-05496 CBM (JPR) |
| Plaintiff | FIRST AMENDED COMPLAINT |
| v. | |
| Ronald Perlstein, Ronald Perlstein, Trustee of the Ronald Perlstein Profit Sharing Plan FBO, Ronald Perlstein, Entrust #00393 As to an UND 100% Interest Story Investment LLC, Vicky Ezell, Fidelity National Title Company, Kathleen Herrera, Western Fidelity Trustee, Farmers and Merchants Bank of Long Beach, American Trust Escrow, Chris Fontes, Equity Funding Source, Judith Krug, Fleet Capital, Sam Ostayan, Adam Garasad and DOES 1–50, Inclusive, | |
| Defendants. | |

1.  Wrongful Foreclosure

2.  Fraud and Intentional Misrepresentation of Fact/Deceit

3.  Bad Faith-Breach of the Duty of Good Faith and Fair Dealing

4.  Breach of Contract

5.  Breach of Fiduciary Duties

6.  Violation of Bankruptcy Automatic Stay (11 U.S.C. § 362)

7.  Unjust Enrichment

8.  Conversion

9.  Constructive Trust

10. Intentional Infliction of Emotional Distress

11. Negligence

12. Injunction Business & Professions § 17200 (Unfair Business Practices)

13 Declaratory Relief

14. Quiet Title

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

INTRODUCTION

The Plaintiff, Linda Veerkamp, was the victim of an unlawful non judicial foreclosure scheme to obtain over $600,000 in equity from her home. The scheme is simple. The first step is to find someone who is vulnerable and can be easily manipulated. The next step is to find someone who has a lot of equity and no substantial liens or encumbrances on their home. The third step is to find someone who is currently unemployed and convince them to apply for a high -risk loan while using their home as collateral. The lender then claims that the homeowner defaulted. The lender also makes it difficult to get re-financing. The lender forecloses and the Trustee arranges for a friend to win the auction of the debtor's home for 40 cents on the dollar.

In the case herein, the plaintiff, Linda Veerkamp had used her lifesavings to pay cash for her $1.2 million dollar home. An unlicensed lender, Ron Perlstein, represented that he was authorized to extend a loan of $370,000 as a custodian for the Entrust Group, Inc.  Perlstein claimed that she had defaulted. The plaintiff filed a Chapter 13 Bankruptcy Petition on November 29, 2023. The automatic stay was in effect when Perlstein and the other creditor Farmers and Merchants Bank of Long Beach (F&M) succeeded in getting the stay lifted by defrauding the Court.

F&M bank sold the plaintiff's loan and service agreement to Perlstein without notifying the Bankruptcy Court, on March 7, 2024. This is a flagrant breach of the bank's fiduciary duties and a violation of the automatic stay by the two creditors. The stay was lifted in May of 2024.

FIRST AMENDED  COMPLAINT

In July of 2024, Trustee Kathleen Herrera claimed that there was a Trustee's sale and that the plaintiff's $1.2 million dollar home was auctioned to the highest bidder for $444,196.00.on May 7, 2024.

On July 9, 2024 2024 defendant Adam Garasad  and his attorney Katherine Meleski filed a verified complaint and submitted a Declaration wherein Garasad claimed that he had attended the Trustee's sale and had submitted the highest bid on May 7, 2024.  Two months later, on September 3, 2024 the attorney Meleske claimed that defendant Sam Ostayan was the winning bidder at the auction on May 9, 2024. Garasad admitted that he did not submit a bid and did not attend the Trustee's sale. He claimed that defendant Sam Ostayan attended and submitted the winning bid. Attorney Meleski's evidence that Sam Ostayan purchased the plaintiff's home at the auction is a signed illegible receipt dated May 9 by Sam Ostayan.

It verifies that attorney Meleski and Adam Garasad knew that Sam Ostayan was at the Trustee's sale on May 9 when they declared under penalty of perjury on July 9, 2024, that Adam Garasad was there on May 9, 2024.

Attorney Meleski did not amend the complaint to add Sam Ostayan as a plaintiff in the Unlawful Detainer action. Attorney Meleski moved for summary judgment on November 26, 2024 claiming that there were no facts in dispute that a valid foreclosure and Trustee's sale had taken place. Veerkamp received permission from the Court to file a written opposition the day of the hearing instead of the day before, and the Court acknowledged receiving it and reviewing it and the supporting evidence. Veerkamp argued  that the evidence showed that there were disputed facts that Garasad was not a Bonafide Purchaser for value, that the Trustee's sale was unlawful, that the auction was rigged, that the defendants presented no proof of valid notice, no

FIRST AMENDED  COMPLAINT

identity of the bidders, no proof that anyone registered for the auction, no proof that it was held on May 9, no proof that any money was paid for the plaintiff's house, no proof that the foreclosure was legal and no proof of standing for the plaintiff.

The Court granted summary judgment only on the mistaken ground that there was no opposition from Veerkamp. Ar rhe hearing on the motion for reconsideration the judge apologized on the record and admitted that he was wrong and now remembered that there was an opposition filed with exhibits. He retired within a couple of weeks but his ruling has been appealed.

ALLEGATIONS OF FACTS

1.      The plaintiff is Linda Veerkamp, a 62 year old and currently unemployed real estate agent who used her lifesavings in 2012 and paid cash for the real property located at 18320 Regina Ave. in Torrance, Ca. 90504. In April of 2022 her home was worth $1.2 million including equity of over $600,000. At that time Linda Veerkamp was interviewed by defendant lender Ronald Perlstein.   Defendant Perlstein offered Plaintiff a high-interest private loan of approximately $370,000. At the time, Plaintiff was unemployed, had limited financial capacity, and was experiencing significant emotional distress stemming from ongoing mental health struggles.

FIRST AMENDED  COMPLAINT

2.      Perlstein knew or should have known that Plaintiff's lack of income disqualified her for the type of loan being offered and intentionally structured the transaction to avoid California consumer protection statutes, falsely designating the loan as "business purpose" to circumvent Civil Code §§ 2923.5 and 2924.

3.      The transaction was orchestrated through an improper blending of Perlstein's individual identity with The Entrust Group custodial IRA account, without lawful authorization or custodial assignment, in violation of Internal Revenue Code § 408, § 4975, and applicable custodial compliance standards.

### Title Officer Collusion & Lucas Reconveyance Failure

4.      In April of 2022 the plaintiff had an outstanding loan of $200,000 from the Lucas Trust and $250,000 from defendant Farmers and Merchants Bank of Long Beach (F&M).  She also had over $600,000 in equity. Perlstein paid $200,000 to the Lucas Trust, out of the $370,000 but didn't record the re-conveyance. He also refused to give the plaintiff final payout information just before he placed her in default. These acts substantially damaged her credit.

5.      Vicky Ezell was employed as an officer and recording agent for defendant Fidelity National Title. She materially contributed to the fraudulent foreclosure and loss of Plaintiff's home by failing to discharge her duty to maintain accurate and complete title records. For over 8 months Ezell and Perlstein failed to process and record the $200,000 reconveyance. This failure to record the plaintiff's payment created a third encumbrance on her home preventing Plaintiff from securing refinance offers that would have cured the loan and preserved her ownership. No one was going to provide a fourth loan to an unemployed homeowner.

6.      Ezell further ignored multiple red flags within the escrow and recording file that would have alerted any competent title officer to serious improprieties. These included non-balancing

Page 5

---

FIRST AMENDED  COMPLAINT

wire transfers, inconsistent payoff figures, duplicate lender and broker fees—some charged in violation of California lending laws—and improper designations of loan purpose intended to circumvent consumer protection statutes. Rather than investigate or flag these irregularities, Ezell proceeded with recording and title clearance actions that enabled Perlstein's coordinated default and foreclosure scheme to proceed. Operating under the authority of Fidelity National Title, Ezell breached both professional and statutory duties. Her conduct directly impaired Plaintiff's ability to preserve her equity, defend against foreclosure, or correct the title record. This constitutes not only negligence, but active intentional participation.

### Bankruptcy Proceedings and Fraud on the Court

7    In response to Perlstein's foreclosure the plaintiff filed a Chapter 13 Bankruptcy Petition on November 29, 2023. The creditors were Farmers and Merchants Bank and Ron Perlstein, Trustee of the Ronald Perlstein Profit Sharing Plan FBO Ronald Perlstein Entrust #00393 as to an undivided 100 % interest,

8.    Farmers and Merchants Bank had filed a Motion to Lift the Automatic Stay on or about February 7, 2024. The plaintiff has recently discovered that Farmers and Merchants Bank sold the plaintiff's loan and servicing agreement to a company called Story Investments, Inc. on March 7, 2024. This transaction was completed without the knowledge or approval of the Bankruptcy Court. Story Investments, Inc., is owned by Ronald Perlstein. The entire transaction was concealed from the Court.

9.    A creditor who assigns, sells, or transfers an interest in estate property (like a deed of trust) without bankruptcy court approval, violates the automatic stay under § 362(a)(3). This renders the transfer void, not just voidable. In re Perl, 811 F.3d 1120 (9th Cir. 2016) In re

FIRST AMENDED COMPLAINT

Schwartz, 954 F.2d 569 (9th Cir. 1992).

10.    F&M Bank lost its Standing in the Bankruptcy Court when it sold the plaintiff's First Loan on March 7, 2024. Astonishingly, F&M's attorney attended a hearing on March 12, 2024 and did not advise the court that the security interest had been transferred or sold to a company that was owned by Ronald Perlstein.

11.    F&M Bank breached its fiduciary duty to the plaintiff when it sold her loan and transferred all of her personal data to Ronald Perlstein, who was unlicensed and an adverse party. It should be noted that F&M's attorney continued to appear at hearings and file pleadings despite having no standing, but to assist Ronald Perlstein in his effort to get the automatic stay lifted. F&M Bank and Perlstein concealed their transaction from the Court and continued to appear with no standing for two more months until they succeeded in getting the automatic stay lifted and the case dismissed.

12.    On April 2, 2024 Perlstein declared under oath to the U.S Trustee Nancy Curry that he was a custodian for Ron Perlstein, Trustee of the Ronald Perlstein Profit Sharing Plan FBO Ronald Perlstein Entrust #00393 as to an undivided 100 % interest. This was a false statement. (Doc. 35 p.6.)

13.    In April of 2025 the plaintiff discovered that Mr. Perlstein had a simple IRA self direct account and no authority to issue loans or represent that he could bind the Entrust Group, or sign for the Entrust Group. Because he was unlicensed, he also couldn't enforce any loan or foreclose on anyone's home.

14.    Because of F&M Bank's illegal sale and transfer of the plaintiff's loan and service agreement in Bankruptcy Court, the stay was lifted and Perlstein foreclosed on her home on May

FIRST AMENDED  COMPLAINT

7, 2024 and auctioned off her $1.2 million dollar home for $444,186.96. There was only one bid for a house that was worth $1.2 million dollars and that one bid just happened to be one penny more than the default debt of $444,186.95. Apparently, no one else was interested in saving $800,000?

15.     On March 7, 2024, Farmers & Merchants Bank knowingly and unlawfully participated in a scheme to facilitate the fraudulent transfer of real property during the pendency of an active bankruptcy stay, in direct violation of 11 U.S.C. § 362, multiple provisions of the Bankruptcy Code, the California Penal Code, federal lending laws, and its own fiduciary obligations under federal and state banking regulations.

16.     In a flagrant breach of duty, Farmers & Merchants Bank sold or otherwise transferred mortgage servicing rights or beneficial interests in Plaintiff's encumbered real property to an **adversarial creditor**, Ronald Perlstein, or his designees, for the express purpose of allowing Perlstein to circumvent lawful foreclosure protections and retain strategic control over the collateral through a fraudulent foreclosure. At the time of this transfer, a federal bankruptcy stay was in full force and effect. This transfer was not only an **unauthorized post-petition transaction**, but one made in **willful violation of the automatic stay**, constituting a **felony** under 18 U.S.C. § 152(2), (6), and § 157 (Bankruptcy Fraud), and grounds for severe sanctions under 11 U.S.C. § 362(k).

17.     Moreover, the Bank continued to **assert false standing and ownership claims** in both state and federal proceedings, knowingly filing or supporting declarations that bolstered Perlstein's fraudulent conduct. By doing so, Farmers & Merchants Bank committed **fraud upon**

**the court**, an act which vitiates all orders obtained thereby and constitutes an abuse of process under both California and federal law.

18      In addition, the Bank **breached the confidentiality and data handling obligations** owed to the debtor by unlawfully transmitting **privileged mortgagee information**, including borrower payment records, personal identifying data, and loan status, to an **unlicensed and adverse third party**. This constitutes a violation of:

> The **California Financial Information Privacy Act (Cal. Fin. Code §§ 4050–4060)**,
>
> The **Gramm-Leach-Bliley Act (15 U.S.C. §§ 6801–6809)**,
>
> FDIC guidance on third-party data sharing and vendor due diligence,
>
> And **standard bank charter obligations** requiring both pre-disclosure notice and borrower consent.

19.     Worse still, the F&M Bank failed to perform **even the most basic due diligence** before consummating this transfer. By selling or conveying loan rights to a party known to be **hostile to the debtor and unlicensed to service loans**, F&M Bank **abandoned its duty of care**, and **enabled the use of privileged borrower information as a weapon of fraud**. It is no exaggeration to conclude that the Bank's actions make it **jointly liable** for the theft of Plaintiff's real property alongside Ronald Perlstein, Kathleen Herrera, Sam Ostayan, Adam Garasad and Katherine Meleski. Each of these actors played a role in implementing the fraudulent foreclosure scheme, and the Bank's conduct gave it the **facial legitimacy** required to proceed under color of law.

FIRST AMENDED COMPLAINT

20.    The coordinated conduct of Farmers & Merchants Bank and these named individuals has caused irreparable harm to Plaintiff's rights, damaged the integrity of the court, and demands the full intervention of this Court through cancellation of all recorded instruments, injunctive relief, damages, sanctions, and referral to the appropriate criminal and regulatory authorities.

21.    Farmers and Merchants Bank lost its standing in Bankruptcy Court when it sold the plaintiff's security interest on March 7, 2024. It continued to help Perlstein get the automatic stay lifted so he could foreclose on the plaintiff's home, by concealing from the Court that they had no standing. The Court granted their Motion seeking relief from the automatic stay on May 7, 2024. This is a void judgment.

## Trustee Substitution Violations

22.    In early 2023, Defendant KATHLEEN HERRERA, acting through WESTERN FIDELITY TRUSTEES, executed and recorded a Substitution of Trustee based solely on Perlstein's signature — lacking authorization from The Entrust Group as required under custodial compliance.

23.    California Civil Code § 2934a requires that substitutions be executed by the beneficiary of record — not self-appointed actors without custodial delegation.

24.    The defective substitution rendered all subsequent default notices statutorily void.

## Serial Defective Notices of Default

**25.**    On May 23, 2023, Defendant Herrera issued the first Notice of Default containing inflated, inaccurate, and unverified loan balances.

26.    After initial procedural defects, the first Notice of Default was rescinded.

27.     In violation of California Civil Code § 2924, Defendant Herrera re-filed a second Notice of Default using the exact same trustee sale number, recycling the original defective proceeding and unlawfully restarting the foreclosure process.

### Improper Foreclosure Sale & Bid-Rigging

28.     On or about May 7, 2024, the Trustee's Sale was conducted only days after bankruptcy dismissal, violating California Civil Code § 2924f's mandatory 21-day post-dismissal publication period.

29.     The winning bidder was nominally identified as ADAM GARASAD aka DIMO GARASAD, who later admitted under oath that he never attended or bid at the auction.

30.     Four months post-sale, Garisad's attorney disclosed that SAM OSTAYAN was the actual proxy bidder.  Sam Osttayan did not register for the auction

31.     Proof of payment consisted of photos of two cashier's checks, predated one month before the sale and issued to third-party names unrelated to the transaction. These were pictures of two cashiers checks and there was no proof that they had been cashed.

32.     Trustee Herrera produced only an unsigned scribbled receipt referencing $400,000 cash as purported evidence of sale consideration — a practice entirely inconsistent with statutory trustee obligations. The Trustee had no evidence that a Trustee's sale or an auction had taken place. There was no evidence that either Adam Garasad or Sam Ostayan had registered for the auction. It was like someone had decided in July that an auction had taken place in May.

33.     The foreclosure sale was, therefore, entirely fictitious, designed solely to strip title from Plaintiff.

34.     Defendant Adam Garasad  contacted the plaintiff after the stay was lifted and demanded possession of the plaintiff's home. The plaintiff was frightened at the thought that she could possibly lose her home.

FIRST AMENDED  COMPLAINT

35.     Attorney Katherine Meleski filed a verified Unlawful Detainer Complaint on 7-9-24 that claimed under penalty of perjury that Adam Garasad was at the Trustee's sale on May 9, 2024. She claimed that he was the highest bidder at the foreclosure auction. She attached a declaration from Adam Garasad aka Dimo Garasad claiming that he was the winning bidder at the Trustee's sale held on May 7, 2024. The Bankruptcy Stay was in effect on May 7 and protected the plaintiff from foreclosure. which may help to explain why the date is changed to May 9th in the body of the declaration.

36.     Adam Garasad signed the declaration on May 9, 2024 from his home near San Francisco so it most likely that he would have been in Pasadena for the auction on May 7, 2024. At his deposition in October, Garasad would admit that he didn't attend the auction.

37.     From July to September of 2024 attorney Katherine Meleski claimed that Adam Garasad was at the Trustee's sale on May 9, 2024 and that he submitted the winning bid and paid for the house on May 9th.

38.     On September 3, 2024 Attorney Meleski announced that her client Adam Garasad did not attend the Trustee's sale on May 9th and he did not bid at the auction.  She said that a man named Sam Ostayan attended the auction and placed the winning bid on May 9, 2024.

39.     Attorney Meleski confirmed that Sam Ostayan was given a receipt by the Trustee at the auction for a $400,000 payment on May 9th.  Meleski's client Adam Garasad confirmed Sam's Ostayan's signature on the May 9th receipt at Garisad's deposition on October 2, 2024.

FIRST AMENDED  COMPLAINT

40.     Adam Garasad testified at his deposition that he didn't attend the Trustee's sale on May 9 and that he didn't submit any bids. He said that he never left his place of employment in San Francisco.

41     Attorney Meleski knew that Sam Ostayan claimed that he was at the auction on May 9 and had a receipt to prove it, and verified a complaint on July 9th that Adam Gaeasad was at the auction

42.     He stated that his uncle Sam Ostayan attended the sale and placed the bid for him. Garasad claims that he and his uncle had discussed the purchase of the plaintiff's home as the start of a career change for him, or, as a first project for Adam.  He admitted that they both knew before May 9, 2024 that Sam would be going to the Trustee's sale. That means that Garasad and his lawyer knew that he was not telling the truth under oath when they attached  his declaration of May 9, 2024 and filed the verified complaint on July 9th  confirming that Adam Garasad attended the auction on May 9th and submitted the highest bid. Sam Ostayan confirms that he attended the Trustee's sale on May 9 in his declaration of 10-30-24. Attorney Meleski has now submitted evidence and verified that Sam Ostayan was present at the trustee's sale on May 9, 2024.

43.     This attorney has actively mis represented material facts and has intentionally corrupted the evidence to mislead the plaintiff and the Court. There is no evidence to suggest that Garasad or Ostayan was at an auction or a Trustee's sale on May 9, 2024.

**Initial Predatory Lending Scheme by Perlstein**

**44.**     On or about April 2 of 2022, Defendant RONALD PERLSTEIN interviewed Plaintiff with an offer to provide a private loan secured by her property.  Plaintiff, at the time, was

unemployed, emotionally vulnerable and undergoing treatment for severe anxiety, bipolar disorder, and related psychiatric conditions.

45.    Defendant Perlstein was fully aware of Plaintiff's vulnerable financial and emotional condition and intentionally structured a $370,000 short-term hard money loan to maximize leverage over Plaintiff's home equity.

46.    The loan was falsely designated as "business purpose" in violation of California Homeowner Bill of Rights statutes (Civil Code §§ 2923.5, 2924), intentionally stripping Plaintiff of borrower protections afforded to residential owner-occupants.

47.    Defendant Perlstein further structured the transaction to feign IRS compliance by vesting the Deed of Trust as:  "The Entrust Group Inc., Custodian FBO Ronald Perlstein Profit Sharing Plan Account #00393."

48.    This hybrid vesting falsely implied custodial compliance under Internal Revenue Code §§ 408 and 4975 while allowing Perlstein to act individually as lender, foreclosure agent, and trustee officer, all without lawful custodial delegation or authority. In fact, no proper custodial assignment or delegation from Entrust Group was ever executed, recorded, or authorized for foreclosure activities, violating SDIRA compliance, custodial fiduciary obligations, and federal tax code provisions.

49.    The Trustee's sale and auction, if there was one, was rigged with the highest bidder preselected. The winning bid is ridiculously low, like forty cents on the dollar. In the case herein, the plaintiff's home is valued at $1.2 million yet it was supposedly purchased at auction for only $444,186.96. That was one penny more than the default debt/opening bid of $444,186.95. No other bid was documented which is a very reliable indicator of a rigged auction. This requires

FIRST AMENDED  COMPLAINT

the participation of a Trustee and the person who claims to be the winning bidder. The winning bidder then appears on the scene and claims ownership of the home. That person is the defendant Adam Garasad. The Trustee is defendant Western Fidelity Trustees-Kathleen Herrera. The lender is defendant Ronald Perlstein.

50.    The Court did grant summary judgment to Garasad but not on the merits. The Court mistakenly, granted the motion because  it incorrectly thought that Veerkamp and her attorney didn't file an Opposition. The defendants have  taken advantage of the erroneous ruling and have evicted the plaintiff from her own home. She is asking this Court to review the evidence and reinstate her to possession. She is currently homeless and living on the street.

51.    The plaintiff contends that the original loan for $370,000 was illegal and that lender Ron Perlstein had no authority to issue the loan. He was not licensed and had no authority to foreclose.

52.    Ronald Perlstein presented himself to Linda Veerkamp as a legitimate lender, stating he was acting as: "Trustee of the Ronald Perlstein Profit Sharing Plan FBO Ronald Perlstein, Entrust #00393" He claimed to have full authority to Originate loans, take title in the name of this entity, And act unilaterally on its behalf.

**53.    IRC § 408(a)** – A Self-Directed IRA (SDIRA) must be held in trust **exclusively for the benefit** of the individual and must be administered by a **qualified custodian**. The individual may not: Use the plan assets for personal gain (self-dealing),

   o   Act as the custodian,

   o   Direct transactions without documented authority from the custodian.

FIRST AMENDED  COMPLAINT

**54.**    **ERISA § 406(a)–(b)** – Fiduciaries of a plan (like a profit-sharing plan):

- ○ **Cannot engage in transactions** that benefit themselves or a related party,
- ○ **Cannot act on both sides of a transaction** (e.g., as both lender and trustee),
- ○ Must act with **undivided loyalty** to the plan.

**55.**    **IRC § 4975** – Defines "**prohibited transactions**" including:

- ○ Loans to disqualified persons,
- ○ Use of plan assets for personal benefit,
- ○ Dual-role conduct without independent fiduciary oversight.

**56.**    **IRS Notice 2004-8** – Any improper use of plan structure to circumvent tax laws is treated as **abusive tax avoidance**, and the involved party can be **disqualified** from using tax-sheltered vehicles.

**57.**    **What Perlstein Cannot Do**

Perlstein, as a plan participant and trustee, **may not:**

- Use his own SDIRA or Profit Sharing Plan to **loan to a personal acquaintance** (Veerkamp),
- Use a hybrid or fictitious vesting ("Entrust #00393" alongside "Profit Sharing Plan") without formal IRS qualification,

---

- Act without **documented custodial approval** (e.g., Buy Direction Letter signed by Entrust, which is absent here),

- Foreclose, direct notices, or transfer title **without full substitution authority**, recorded assignments, and separate trustee approval.

**58.    Agency with Herrera**: Herrera carried out acts Perlstein directed **without lawful substitution**. She never had valid agency authority recorded under Civ. Code § 2934a prior to issuing the notice of default. Her acts are void. He further directed communications through Kathleen Herrera and appeared to exercise control as both lender and servicer, using DANCO Inc. and Western Fidelity as arms of his authority.

59.    Ronald Perlstein submitted a sworn declaration to the U.S. Trustee declaring himself as the "custodian of the books and records of the Movant that pertain to loans and extensions of credit." In truth and in fact, he held no such custodial authority. Documents obtained from The Entrust Group make clear that:

60.    All legal custodial powers rest solely with The Entrust Group, Inc. The account holder (Perlstein) is prohibited from executing or signing documents without express written approval and execution by Entrust. All documents require Entrust's signature and must comply with strict titling requirements.

61.    Despite these limitations, Perlstein fraudulently executed a Deed of Trust and proceeded with foreclosure proceedings in his own name, purporting to act as "Trustee of the Ronald Perlstein Profit Sharing Plan FBO Ronald Perlstein, Entrust #00393," a structure that does not appear to exist as a qualified plan under ERISA or the Internal Revenue Code.

FIRST AMENDED COMPLAINT

62.    The trustee's sale was conducted under a fictitious legal framework involving: A fabricated grantee, "Dimo Garasad," not registered or legally identifiable;. An immediate conveyance from this fictitious grantee to Defendant Adam Garasad, who then filed an unlawful detainer relying on void title;

63.    False statements under oath and through counsel in the unlawful detainer proceeding that concealed the true origin of the deed and the fictitious nature of the grantee;  Concealment of all transfers from the bankruptcy court and creditor matrix. These defects render the trustee's deed void ab initio and evidence a coordinated fraud designed to evade bankruptcy protections and due process.

64.    The Entrust Group's internal documents disclaim fiduciary status, but they also establish that all transactions must be lawfully executed, compliant with federal law, and signed by Entrust itself. No such authorizations exist on record for the transaction at issue. Entrust failed to: Prevent Perlstein from executing instruments falsely claiming custodial authority; Confirm the legality of the underlying "Profit Sharing Plan" structure;  Monitor or reject a transaction that resulted in wrongful foreclosure. As such, Entrust is liable as an aider and abettor or, in the alternative, for gross negligence.

# PARTIES

65.    Plaintiff **LINDA VEERKAMP** is, and at all relevant times was, a resident of Los Angeles County, California, and the lawful fee simple owner of real property located at 18320 Regina Avenue,

Page 18

Torrance, California 90504 (the "Subject Property"). Plaintiff acquired the property in 2012 by paying cash using her life savings and held substantial equity at all relevant times.

66.    Defendant **RONALD PERLSTEIN** is an individual residing in Los Angeles County who operates as a private unlicensed hard-money lender. Perlstein fraudulently engineered a predatory loan structure designed to deprive Plaintiff of her equity through constructive foreclosure, misrepresentations, and manipulation of statutory foreclosure and bankruptcy processes.

67.    Defendant **THE ENTRUST GROUP INC.** is a California business entity authorized to conduct business in the State of California as an IRA custodian. The Entrust Group was the legal custodian of a self-directed IRA (SDIRA) account held for the benefit of Perlstein, Account #00393. Perlstein was not authorized to act individually on behalf of the custodian, nor were the custodial documents lawfully recorded to permit Perlstein to independently enforce lien rights under California or federal law.

68.    Defendant **THE RONALD PERLSTEIN PROFIT SHARING PLAN FBO** is identified as part of the fabricated custodial structure used to create the appearance of valid custodial authority under IRC § 408 and § 4975.

69.    Defendant **STORY INVESTMENT LLC** I. and DANCO Corp are California business entities used by Perlstein and other defendants to conceal the assignment of secured interests originally held by Farmers & Merchants Bank during a period when Plaintiff's Chapter 13 bankruptcy was still pending and subject to judicial supervision.

70.    Defendant **VICKY EZELL** is an individual employed by Defendant **FIDELITY NATIONAL TITLE COMPANY** who knowingly facilitated the fraudulent title transactions and failed to properly

record reconveyances, substitutions, and payoff instruments that would have accurately reflected the chain of title.

71      Defendant **FIDELITY NATIONAL TITLE COMPANY** is a title insurance company licensed in California that materially contributed to the fraudulent recordation of instruments that enabled the wrongful foreclosure scheme.

72      Defendant **KATHLEEN HERRERA** is an individual employed by **WESTERN FIDELITY TRUSTEES**, acting as both trustee officer and foreclosure trustee during the sale process, in violation of her duties of neutrality and statutory impartiality under California law.

73      Defendant **WESTERN FIDELITY TRUSTEE** is a foreclosure trustee authorized to conduct nonjudicial sales under California Civil Code §§ 2924 et seq., which engaged in wrongful foreclosure by acting without valid substitution of trustee or legal authority.

74.     Defendant **FARMERS & MERCHANTS BANK OF LONG BEACH** originated the original first position loan, which was surreptitiously assigned to Story Investment LLC without proper disclosure, notice, or consent during Plaintiff's active bankruptcy proceedings.

75.     Defendant **AMERICAN TRUST ESCROW** closed the Perlstein loan transaction while allowing excessive fees, unverified payoff demands, and other irregularities in violation of escrow and fiduciary duties.

76.     Defendant **CHRIS FONTES** is an escrow officer at American Trust Escrow who directly handled the fraudulent closing process.

Page 20

FIRST AMENDED COMPLAINT

77.     Defendant **EQUITY FUNDING SOURCE** is a mortgage brokerage or servicing entity that originated or participated in the predatory loan transaction, improperly structuring the transaction to circumvent California homeowner protections.

78.     Defendant **FLEET CAPITAL** is a California business entity that participated in subsequent improper recording of junior liens and unlawful title encumbrances on the Subject Property to facilitate the foreclosure process. Fleet is owned by Sam Ostayan and he has produced  a fraudulent loan to give the appearance that money was paid at the Trustee's sale on May 9, 2024.

79.     Defendant **SAM OSTAYAN** has intentionally misrepresented that he was the highest bidder at the Trustee's sale and that he successfully acquired the title to the plaintiff's home by paying over $400,000 to the Trustee on May 9, 2024. This is false He did not attend the Trustee's sale and he did not pay the Trustee for the plaintiff's home. He also filled out a false affidavit claiming that he attended the auction on May 9, 2025. He has conspired with and has agreed to assist Perlstein and Garasad obtain the plaintiff's home unlawfully. He falsely claimed hat he was a proxy bidder who appeared after-the-fact to claim he submitted the winning bid at the foreclosure auction, though no valid or lawful auction process occurred.

80.     Defendant **ADAM GARISAD**  intentionally misrepresented that he owned the plaintiff's home and lied and that he had paid over $400,000 at a Trustee's sale on May 9, 2024.  He misrepresented that he had purchased the home at a valid auction. He has taken possession of the plaintiff's home and personal property by falsely claiming that he purchased the property at a valid Trustee's Sale. Garasad falsely claimed that he was the owner when he started an unlawful detainer eviction action against Plaintiff.  Garasad  knowingly submitted a false affidavit and  a false verified complaint  in order to convince the Court that he was the owner of the plaintiff's home. The Court did rely on his

FIRST AMENDED  COMPLAINT

misrepresentations and awarded him possession of her home. Garasad has conspired and agreed with the defendants Perlstein and Ostayan to represent that they own her home. They have agreed to do unlawful acts to obtain the plaintiff's property without consent. He has used the void Trustee's Deed Upon Sale obtained through the fraudulent foreclosure scheme. Garisad originally declared that he was the winning bidder, later admitting he did not personally attend the auction.

81.    Plaintiff is informed and believes, and based thereon alleges, that additional defendants exist who are designated as DOES 1 through 50, inclusive, and who are in some manner legally responsible for the actions, events, and circumstances described in this Complaint. These Doe Defendants may include, but are not limited to:

82    Individuals or Entities Acting as Agents or Employees: Persons or entities who, at all relevant times, acted as agents, employees, representatives, or independent contractors for any named Defendant and who participated in or contributed to the wrongful foreclosure, predatory loan practices, and related actions described herein.

83.    Plaintiff alleges that the true names, identities, and capacities of these Doe Defendants are presently unknown. Plaintiff will seek leave of Court to amend this First Amended Complaint to include the true names and capacities of said Doe Defendants when such information is discovered.

84.    Plaintiff is informed and believes, and based thereon alleges, that each of the Doe Defendants is responsible in some manner for the damages and harm alleged herein, whether through direct participation in the wrongful acts, aiding and abetting, conspiracy, negligence, or other actionable conduct.  Plaintiff further alleges that each of the Doe Defendants acted within the scope of their authority as agents, employees, or representatives of the named Defendants, or

FIRST AMENDED  COMPLAINT

acted in concert with them, and that all acts, omissions, and conduct alleged herein were undertaken with the consent, approval, or ratification of the named Defendants and Doe Defendants.

JURISDICTION AND VENUE

85    Venue is proper in this Court pursuant to California Code of Civil Procedure § 395(a) because the Subject Property, which is the basis of this action is situated in Los Angeles County, California. Additionally, many of the acts and omissions alleged herein occurred in Los Angeles County.

86.    Property Ownership: Plaintiff is, and at all relevant times was, the rightful owner of the Subject Property, holding significant equity exceeding $600,000.

87.    Unlawful Eviction: Following the fraudulent foreclosure, Defendants initiated wrongful eviction proceedings, culminating in Plaintiff being forcibly removed from her home.

88.    Adam Garasad moved for summary judgment on November 26, 2024. The plaintiff filed a written opposition and presented argument at the hearing on November 26, 2024. The Court granted summary judgment to Garasad by erroneously ruling that there was no opposition to the motion. No issues of fraud or the criminal activity of the defendants were explored in the Unlawful Detainer hearing.

THE VOID ORDER

89.    The MSJ was held on November 26, 2024. The attorney for Garasad prepared a Proposed Order and a Proposed Judgment for the Court to sign on November the 26th. The Proposed Order was not served on the homeowner. A proposed judgment was also submitted to the Court

on the 26th and was not served on the homeowner or her attorney.

90.    The Order that was prepared by the attorney for Garasad has a proof of service dated November 5, 2024, 21 days before the MSJ was argued. The judgment is void on its face.

91.    In an effort to enter a judgment on the same day that the matter was heard and thereby prevent the homeowner from filing a motion for reconsideration, the attorney for Garasad submitted a proof of service and obtained the Court's signature on an Order that was prepared on November 5, 2024. They attached a proof of service that was dated 21 days before the motion was heard.

92.    Defendant Fleet Capital fraudulently recorded a loan to enable title transfer, depriving Plaintiff of her lawful equity.

93.    Eviction proceedings initiated by Defendants violated due process as they were predicated on the defective and void foreclosure sale.

CAUSES OF ACTION

FIRST CAUSE OF ACTION

WRONGFUL FORECLOSURE

(Against Defendants Perlstein, Garasad, Ostayan and Herrera and Does 1-50, Inclusive)

94.    Plaintiff incorporates by reference and re-alleges each and every allegation contained in paragraphs 1 through 93 of this First Amended Complaint as though fully set forth herein.

95.    Defendants, and each of them, have wrongfully and unlawfully initiated, conducted, and/or participated in the foreclosure process against Plaintiff's property located at 18320

Page 24

Regina Avenue, Torrance, California 90504 (the "Subject Property"), in violation of applicable California laws, including but not limited to California Civil Code § 2923.5 and California Civil Code § 2924.

96.    Defendants lacked legal authority to foreclose on the Subject Property due to:

 a. Failure to provide proper notice as required by California Civil Code § 2923.5, which mandates outreach to borrowers prior to initiating foreclosure proceedings;

 b. Issuance of a defective and fraudulent Notice of Default (NOD) by Defendant Kathleen Herrera, acting as trustee for Defendant Western Fidelity Trustee, which included inflated and inaccurate debt amounts;

 c. Procedural defects in the foreclosure sale, including bid rigging, proxy bidding, and the use of predated cashier's checks, rendering the sale invalid.

 d. Perlstein had no authority to extend a loan to the plaintiff making the foreclosure process illegal and defendants Garasad and Ostayan had agreed to falsely claims that they had won the auction and had purchased the plaintiff's home.

97.    Plaintiff is informed and believes, and based thereon alleges, that Defendants Perlstein, Garasad, Ostayan and Herrera failed to meet their obligations under California law to provide a fair and lawful foreclosure process, and their actions were willful, fraudulent, and in bad faith.

98.    As a direct and proximate result of Defendants' wrongful foreclosure actions, Plaintiff has suffered significant damages, including but not limited to:

 a. Loss of ownership and possession of the Subject Property;

 b. Loss of substantial equity in the Subject Property, exceeding $600,000;

 c. Emotional distress, anxiety, and financial harm resulting from the threat of

Page 25

eviction and displacement.

99.    Venue is proper in this Court pursuant to California Code of Civil Procedure § 395(a) because the Subject Property, which is the basis of this action, is situated in Los Angeles County, California. Additionally, many of the acts and omissions alleged herein occurred in Los Angeles County.

100.    Plaintiff seeks compensatory damages, declaratory relief voiding the foreclosure sale, and an injunction to halt any further foreclosure-related actions by Defendants or their agents and to be placed back into possession of her home.

SECOND CAUSE OF ACTION

FRAUD AND INTENTIONAL MISREPRESENTATION OF FACT/DECEIT

(Against Defendants Perlstein, Garasad, Ostayan and Herrera and Does 1-50, Inclusive)

101    Plaintiff incorporates by reference and re-alleges each and every allegation contained in paragraphs 1 through 100 of this Complaint as though fully set forth herein.

102.    Defendants Perlstein, Garasad, Ostayan and Herrera, and each of them, knowingly made false representations to Plaintiff, including but not limited to:

a. Perlstein misrepresented the terms and conditions of the loan secured by the Subject Property; Garasad and Ostayan misrepresented their involvement in the Trustee's sale and the amounts they paid at auction and the title that they acquired; Herrera misrepresented  the Foreclosure process

b. Misrepresenting their legal authority to initiate and conduct

Page 26

FIRST AMENDED  COMPLAINT

foreclosure proceedings and the amounts that they had paid;

c. Falsifying foreclosure-related documents, including the Notice of Default and Notice of Trustee Sale, with inflated and inaccurate amounts;

d. Concealing material facts, including the true identities of the parties involved in the foreclosure auction and the improper substitution of trustees. Their attendance and purchase price at auction;

103.    Defendants, and each of them, made these false representations and omissions with the intent to deceive and induce reliance by Plaintiff, causing Plaintiff to lose her home, equity, and peace of mind.

104.    Plaintiff reasonably relied on Defendants' representations to her detriment, believing that Defendants were acting in accordance with California law and the terms of her loan agreement.

105.    Plaintiff is informed and believes, and based thereon alleges, that Defendants acted with knowledge of the falsity of their representations and with the specific intent to defraud Plaintiff for their financial gain.

106.    As a direct and proximate result of Defendants' fraudulent acts and omissions, Plaintiff has suffered damages, including but not limited to:

a. Loss of the Subject Property;

b. Loss of substantial equity exceeding $600,000;

c. Emotional distress, including anxiety, depression, and sleeplessness;

d. Financial harm, including legal costs and damage to Plaintiff's credit reputation.

107.    Plaintiff is further informed and believes that Defendants' fraudulent actions were willful,

oppressive, and undertaken with malice, justifying an award of punitive damages to deter such conduct in the future.

108.    Venue is proper in this Court pursuant to California Code of Civil Procedure § 395(a) because the Subject Property, which is the basis of this action, is situated in Los Angeles County, California. Additionally, many of the acts and omissions alleged herein occurred in Los Angeles County.

109.    Plaintiff seeks compensatory damages, punitive damages, and such other and further relief as this Court may deem just and proper.

THIRD CAUSE OF ACTION

BREACH OF FIDUCIARY DUTIES

(Against Farmers and Merchants Bank of Long Beach, The Equity Funding Source, American Trust Escrow, Vicki Ezell, Fidelity, Western Fidelity, Perlstein, and Does 1-50, Inclusive)

110.    Plaintiff incorporates by reference and re-alleges each and every allegation contained in paragraphs 1 through 109 of this Complaint as though fully set forth herein.

111.    Defendants owed Plaintiff fiduciary duties to act in good faith, provide accurate information, and protect Plaintiff's interests in all transactions related to the Subject Property.

FIRST AMENDED COMPLAINT

112.    Defendant Farmers and Merchants Bank breached their fiduciary duties by prioritizing financial gain over Plaintiff's interests, when F&M sold the plaintiff's first loan and service agreement to Ron Perlstein on March 7, 2024  while they were in Bankruptcy Court. The remaining defendants  breached their dutiesfacilitating predatory lending practices, and failing to safeguard Plaintiff's equity.

113.    As a direct and proximate result of Defendants' breaches, Plaintiff suffered damages, including but not limited to financial loss, emotional distress, and the loss of the Subject Property.

114.    Venue is proper in this Court pursuant to California Code of Civil Procedure § 395(a) because the Subject Property, which is the basis of this action, is situated in Los Angeles County, California. Additionally, many of the acts and omissions alleged herein occurred in Los Angeles County.

115.    Plaintiff seeks compensatory damages and any other relief the Court deems just and proper.

FOURTH CAUSE OF ACTION

BREACH OF CONTRACT

(Against All Named Defendants and Does 1-50, Inclusive)

116.    Plaintiff incorporates by reference and re-alleges each and every allegation contained in paragraphs 1 through 115 of this Amended Complaint as though fully set forth herein.

117.    Plaintiff and Defendants entered into written agreements, including loan and escrow

FIRST AMENDED  COMPLAINT

agreements, related to the Subject Property. These agreements contained both express and implied terms requiring Defendants to act in good faith, provide accurate information, and comply with all applicable laws and regulations.

118.    Defendants breached these agreements by:

a. Failing to provide accurate and timely notices related to the foreclosure process;

b. Failing to account for payments made by Plaintiff accurately;

c. Falsifying foreclosure-related documents;

d. Engaging in unlawful and fraudulent conduct that undermined the contractual relationship between the parties.

119.    As a direct and proximate result of Defendants' breaches, Plaintiff suffered damages, including but not limited to:

a. Financial losses resulting from the wrongful foreclosure;

b. Loss of the Subject Property and substantial equity;

c. Emotional distress caused by Defendants' conduct.

120.    Venue is proper in this Court pursuant to California Code of Civil Procedure § 395(a) because the Subject Property, which is the basis of this action, is situated in Los Angeles County, California. Additionally, many of the acts and omissions alleged herein occurred in Los Angeles County.

121.    Plaintiff seeks compensatory damages and such other relief as this Court deems just and proper.

FIRST AMENDED COMPLAINT

FIFTH CAUSE OF ACTION

VIOLATION OF BANKRUPTCY AUTOMATIC STAY

(11 U.S.C. § 362)

(Against Farmers and Merchants Bank, Perlstein, Story Investments Inc., and Does 1-50, Inclusive)

122    Plaintiff incorporates by reference and re-alleges each and every allegation contained in paragraphs 1 through 121 of this Amended Complaint as though fully set forth herein.

123    Plaintiff filed for Chapter 13 bankruptcy protection on November 29, 2023, triggering an automatic stay under 11 U.S.C. § 362.

124.    Despite the automatic stay, Defendants willfully and knowingly violated federal bankruptcy law by:

a. Conducting a foreclosure auction of the Subject Property on May 7, 2024, while the stay was in effect; Transferring loan and service agreement on March 12, 2024 while in Bankruptcy Court

b. Proceeding with actions to transfer title to the Subject Property despite the stay;

c. Initiating eviction proceedings against Plaintiff while the stay remained in place.

125.    Defendants' actions were taken with knowledge of the bankruptcy stay and in blatant disregard for Plaintiff's legal rights.

126.    As a direct and proximate result of Defendants' willful violations of the automatic stay,

Page 31

FIRST AMENDED COMPLAINT

Plaintiff suffered damages, including but not limited to:

      a. Loss of the Subject Property and equity;

      b. Legal expenses incurred to protect Plaintiff's rights under bankruptcy law;

      c. Emotional distress caused by Defendants' unlawful conduct.

127.   Venue is proper in this Court pursuant to California Code of Civil Procedure § 395(a) because the Subject Property, which is the basis of this action, is situated in Los Angeles County, California. Additionally, many of the acts and omissions alleged herein occurred in Los Angeles County.

128   Plaintiff seeks compensatory damages, punitive damages, and such other relief as this Court deems just and proper.

SIXTH CAUSE OF ACTION

UNJUST ENRICHMENT

(Against All Named Defendants and Does 1-50, Inclusive)

129.   Plaintiff incorporates by reference and re-alleges each and every allegation contained in paragraphs 1 through 128 of this Complaint as though fully set forth herein.

130.   Defendants, through their wrongful acts, have been unjustly enriched at Plaintiff's expense by:

a. Profiting from the foreclosure sale of the Subject Property without lawful authority;

b. Obtaining Plaintiff's equity in the Subject Property through fraudulent and unlawful means.

131.    Plaintiff alleges that Defendants' retention of these benefits is unjust and inequitable, and Defendants should be required to disgorge all profits and benefits derived from their wrongful actions.

132.    Venue is proper in this Court pursuant to California Code of Civil Procedure § 395(a) because the Subject Property, which is the basis of this action, is situated in Los Angeles County, California. Additionally, many of the acts and omissions alleged herein occurred in Los Angeles County.

133    Plaintiff seeks restitution and such other relief as this Court deems just and proper.


SEVENTH CAUSE OF ACTION

CONVERSION

(Against All Named Defendants and Does 1-50, Inclusive)

134.    Plaintiff incorporates by reference and re-alleges each and every allegation contained in paragraphs 1 through 76 of this Complaint as though fully set forth herein.

135.    Defendants wrongfully converted Plaintiff's property and equity by:

      a. Engaging in fraudulent foreclosure proceedings;

      b. Taking possession of the Subject Property without lawful authority;

      c. Transferring ownership of the Subject Property to third parties based on invalid and fraudulent foreclosure actions.

136.    As a direct and proximate result of Defendants' conversion, Plaintiff suffered damages, including but not limited to:

FIRST AMENDED COMPLAINT

a. Loss of the Subject Property;

b. Loss of equity exceeding $600,000;

c. Emotional distress and financial harm.

137.    Venue is proper in this Court pursuant to California Code of Civil Procedure § 395(a) because the Subject Property, which is the basis of this action, is situated in Los Angeles County, California. Additionally, many of the acts and omissions alleged herein occurred in Los Angeles County.

138.    Plaintiff seeks compensatory damages, punitive damages, and such other relief as this Court deems just and proper.


EIGHTH CAUSE OF ACTION

CONSTRUCTIVE TRUST

(Against All Named Defendants and Does 1-50, Inclusive)

139.    Plaintiff incorporates by reference and re-alleges each and every allegation contained in paragraphs 1 through 138 of this Complaint as though fully set forth herein.

140    Defendants hold proceeds and property obtained through fraudulent and wrongful acts, necessitating the imposition of a constructive trust to prevent unjust enrichment.

141    Plaintiff alleges that Defendants should be deemed trustees of the Subject Property and all related profits for the benefit of Plaintiff, with a duty to restore the property and its value to Plaintiff.

FIRST AMENDED COMPLAINT

142.    Venue is proper in this Court pursuant to California Code of Civil Procedure § 395(a) because the Subject Property, which is the basis of this action, is situated in Los Angeles County, California. Additionally, many of the acts and omissions alleged herein occurred in Los Angeles County.

143.    Plaintiff seeks an order imposing a constructive trust on the Subject Property and related profits and such other relief as this Court deems just and proper.

NINTH CAUSE OF ACTION

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(Against Defendants Perlstein, Garasad, Ostayan, F&M Bank Kathleen Herrera. and Does 1-50, Inclusive)

144.    Plaintiff incorporates by reference and re-alleges each and every allegation contained in paragraphs 1 through 143 of this Complaint as though fully set forth herein.

145.    Defendants engaged in conduct that was extreme, outrageous, and beyond the bounds of decency in a civilized society. Such conduct includes, but is not limited to:

a. Perlstein and Herrera fraudulently initiating and carrying out a wrongful foreclosure process;

b. Perlstein, Garasad and  Ostayan falsifying documents and concealing material facts to deceive Plaintiff;

c. Garasad and Ostayan pursuing eviction proceedings without lawful authority.

146.    Defendants acted intentionally or recklessly, with the knowledge that their conduct would cause severe emotional distress to Plaintiff.

FIRST AMENDED  COMPLAINT

147    As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, including anxiety, depression, and physical manifestations of trauma.

148.    Venue is proper in this Court pursuant to California Code of Civil Procedure § 395(a) because the Subject Property, which is the basis of this action, is situated in Los Angeles County, California. Additionally, many of the acts and omissions alleged herein occurred in Los Angeles County.

149.    Plaintiff seeks compensatory damages, punitive damages, and such other relief as this Court deems just and proper.

TENTH CAUSE OF ACTION

NEGLIGENCE

(Against All Named Defendants and Does 1-50, Inclusive)

150.    Plaintiff incorporates by reference and re-alleges each and every allegation contained in paragraphs 1 through 149 of this Complaint as though fully set forth herein.

151.    Defendants owed Plaintiff a duty of care regarding the management, servicing, and foreclosure of the loan secured by the Subject Property, including but not limited to:

   a. Accurately crediting payments to Plaintiff's loan account;

   b. Providing accurate information regarding the loan balance and foreclosure process;

   c. Complying with all applicable state and federal laws related to foreclosure procedure;

   d. Acting in good faith to resolve any disputes before initiating foreclosure.

FIRST AMENDED COMPLAINT

152    Defendants breached their duty of care by engaging in wrongful acts, including but not limited to:

a. Failing to properly apply Plaintiff's mortgage payments;

b. Failing to provide legally mandated notices prior to initiating foreclosure;

c. Conducting a foreclosure sale with procedural defects and fraudulent documentation;

d. Ignoring Plaintiff's bankruptcy protection under 11 U.S.C. § 362.

153    As a direct and proximate result of Defendants' negligence, Plaintiff suffered damages, including but not limited to:

a. Loss of the Subject Property and equity exceeding $600,000;

b. Financial harm due to unnecessary fees and expenses;

c. Emotional distress caused by the threat of foreclosure, wrongful eviction, and the resulting loss of home and stability.

154.    Venue is proper in this Court pursuant to California Code of Civil Procedure § 395(a) because the Subject Property, which is the basis of this action, is situated in Los Angeles County, California. Additionally, many of the acts and omissions alleged herein occurred in Los Angeles County.

155.    Plaintiff seeks compensatory damages and such other relief as this Court deems just and proper.

FIRST AMENDED COMPLAINT

ELEVENTH CAUSE OF ACTION

INJUNCTIVE RELIEF PURSUANT TO CALIFORNIA

BUSINESS AND PROFESSIONS CODE § 17200

(Against All Named Defendants and Does 1-50, Inclusive)

156.    Plaintiff incorporates by reference and re-alleges each and every allegation contained in paragraphs 1 through 155 of this Complaint as though fully set forth herein.

157.    Defendants engaged in unlawful, unfair, and fraudulent business practices in violation of California Business and Professions Code § 17200 by:

    a. Initiating foreclosure proceedings based on false and fraudulent documents;

    b. Violating California Civil Code §§ 2923.5 and 2924 by failing to provide proper notice and engaging in procedural defects;

    c. Conducting a foreclosure sale with inflated debt amounts and without lawful authority.

158.    Defendants' actions constitute unfair competition and have caused significant harm to Plaintiff by depriving her of the Subject Property and the equity therein.

159.    Plaintiff alleges that Defendants' business practices are contrary to established public policy and are likely to deceive other consumers if not enjoined by this Court.

160    As a result of Defendants' unfair business practices, Plaintiff has suffered irreparable harm and requests injunctive relief to prevent further harm, including but not limited to preventing Defendants from transferring or encumbering the Subject Property.

161.    Venue is proper in this Court pursuant to California Code of Civil Procedure § 395(a)

because the Subject Property, which is the basis of this action, is situated in Los Angeles County, California. Additionally, many of the acts and omissions alleged herein occurred in Los Angeles County.

162.    Plaintiff seeks a temporary restraining order, preliminary injunction, and permanent injunction to prevent Defendants from engaging in further wrongful acts related to the Subject Property.

TWELFTH CAUSE OF ACTION

DECLARATORY RELIEF

(Against All Named Defendants and Does 1-50, Inclusive)

163.    Plaintiff incorporates by reference and re-alleges each and every allegation contained in paragraphs 1 through 162 of this Complaint as though fully set forth herein.

164.    An actual and justiciable controversy has arisen between Plaintiff and Defendants concerning their respective rights and duties regarding the Subject Property.

165.    Plaintiff contends that:

      a. Defendants wrongfully initiated and conducted foreclosure proceedings;

      b. The foreclosure sale is void due to procedural defects and violations of law;

      c. Plaintiff remains the rightful owner of the Subject Property.

166.    Defendants, however, claim or may claim adverse interests in the Subject Property, which

Plaintiff asserts are without legal or equitable basis.

167.    Venue is proper in this Court pursuant to California Code of Civil Procedure § 395(a) because the Subject Property, which is the basis of this action, is situated in Los Angeles County, California. Additionally, many of the acts and omissions alleged herein occurred in Los Angeles County.

168.    Plaintiff seeks a judicial declaration that:

    a. The foreclosure sale and related actions are void;

    b. Plaintiff is the sole legal and equitable owner of the Subject Property;

    c. Defendants have no right, title, or interest in the Subject Property.

169.    Plaintiff also seeks such other and further relief as this Court deems just and proper.

THIRTEENTH CAUSE OF ACTION

QUIET TITLE

(Against All Named Defendants and Does 1-50, Inclusive)

170.    Plaintiff incorporates by reference and re-alleges each and every allegation contained in paragraphs 1 through 169 of this Complaint as though fully set forth herein.

171.    Plaintiff contends that she can demonstrate by clear and convincing evidence that:

    a. Defendants wrongfully initiated and conducted foreclosure proceedings;

    b. The foreclosure sale is void due to procedural defects and violations of law;

    c. Plaintiff remains the rightful owner of the Subject Property.

172.    Venue is proper in this Court pursuant to California Code of Civil Procedure § 395(a) because the Subject Property, which is the basis of this action, is situated in Los Angeles

County, California. Additionally, many of the acts and omissions alleged herein occurred in Los Angeles County.

173.    Plaintiff seeks to Quiet Title to the Subject Property and has shown by clear and convincing evidence that:

        a. The foreclosure sale and related actions are void;

        b. Plaintiff is the sole legal and equitable owner of the Subject Property;

        c. Defendants have no right, title, or interest in the Subject Property.

174.    Plaintiff also seeks such other and further relief as this Court deems just and proper.


PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

1. Declaratory Relief: Void the foreclosure sale, Trustee's Deed, and all related transactions.

2. Injunctive Relief: Halt eviction proceedings and bar further title transfers. Restore plaintiff's possession of home.

3. Compensatory Damages: For lost equity, emotional distress, daily living expenses, damage to credit and relocation costs.

4. Punitive Damages: Against each Defendant for willful and malicious misconduct.

5. Restitution: Restore Plaintiff's equity through a constructive trust.

6. Attorney's Fees and Cost

7.  Grant leave to reopen the bankruptcy case and vacate the dismissal based on extrinsic fraud;

FIRST AMENDED  COMPLAINT

8. Issue any further relief necessary to restore Plaintiff's rights and property.

9. And any other relief the court deems just and proper.

Date: 6-24-25                                          By: / s / Steven O'Reilly

                                                          Steven O'Reilly, for the plaintiff

FIRST AMENDED COMPLAINT

**VERIFICATION**

I, LINDA VEERKAMP, am the Plaintiff in this action.

I have read the foregoing Verified Amended Complaint and know the contents thereof.

The same is true of my own knowledge, except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 22nd day of June, 2025 at Los Angeles, California.

/  s  / Linda Veerkamp

LINDA VEERKAMP, Plaintiff

FIRST AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT