# JOINT RULE 26(f) REPORT

**Plaintiff:** LINDA VEERKAMP
**Defendants:** RONALD PERLSTEIN; THE RONALD PERLSTEIN PROFIT SHARING PLAN FBO RONALD PERLSTEIN, ENTRUST ACCOUNT NO. 00393; THE ENTRUST GROUP, INC.; WESTERN FIDELITY TRUSTEES; KATHLEEN HERRERA; FARMERS & MERCHANTS BANK OF LONG BEACH; FIDELITY NATIONAL TITLE COMPANY; VICKY EZELL; ADAM GARASAD; SAM OSTAYAN; FLEET CAPITAL, INC.; EQUITY FUNDING SOURCE; JUDITH KRUG; STORY INVESTMENTS, LLC; and DOES 1–50.

Case No.: 2:25-cv-05496-CBM (JPRx)
Judge: Hon. Consuelo B. Marshall

## 1. Service of the Complaint:

**Joint Statement:**
Plaintiff represents that all Defendants who have appeared in this action have been served with the operative complaint and have either filed a responsive pleading or otherwise appeared through counsel. Any remaining unserved parties will be promptly served in accordance with Federal Rule of Civil Procedure 4, and Plaintiff will file proofs of service in compliance with Local Rule 5-3.

No appearing Defendant presently disputes service for purposes of this Joint Report, while expressly reserving any and all defenses under Rule 12.

## 2. Presence of Lead Counsel:

Lead trial counsel shall attend any proceeding before this Court, including all status and settlement conferences.

**Joint Statement (Identification of Lead Trial Counsel):**

- **For Plaintiff LINDA VEERKAMP:**
  Steven W. O'Reilly
- **For Defendant THE ENTRUST GROUP, INC.:**
  Charles Berwanger and. Reid Damman (with Arianna Eguiluz as associate counsel)
- **For Defendant FARMERS & MERCHANTS BANK OF LONG BEACH:**
  Michael Leight and John Gloger
- **For Defendants ADAM GARASAD, SAM OSTAYAN, and FLEET CAPITAL, INC.:**
  Natalie Garson as lead counsel and Tim Ryan and Andrew Mase

- **For Defendants FIDELITY NATIONAL TITLE COMPANY and VICKY EZELL (also spelled Ezzell in some filings):**
  Sinny B. Thai
- **For Defendants RONALD PERLSTEIN; THE RONALD PERLSTEIN PROFIT SHARING PLAN FBO RONALD PERLSTEIN, ENTRUST ACCOUNT NO. 00393; and STORY INVESTMENTS, LLC:**
  Dan Yourist (with Bradley Yourist and Michael AJ Nangano supporting counsel)
- **For Defendants EQUITY FUNDING SOURCE, INC. and JUDITH KRUG:**
  Jonathan Endman
- **For Defendants WESTERN FIDELITY TRUSTEES and KATHLEEN HERRERA:**
  Robert Schachter

All counsel agree that lead trial counsel will appear at status conferences, settlement conferences, and trial consistent with the Standing Order.

---

## 3. Rule 26(f) Meeting of Counsel:

Counsel for the parties shall meet personally pursuant to Federal Rule of Civil Procedure 26(f) and applicable Local Rules in anticipation of the court-ordered scheduling conference. FED.R.CIV.P. 16(b).

**Joint Statement:**
Pursuant to Federal Rule of Civil Procedure 26(f) and applicable Local Rules, a Rule 26(f) conference was held on **November 13, 2025**. The conference was conducted by videoconference with the participation of the attorneys identified in Section 2 (or their designated colleagues within the same firms). The parties discussed the topics required by Federal Rule of Civil Procedure 26(f) and Judge Marshall's Standing Order, including the factual summary of the case, subject-matter jurisdiction, key legal issues, damages, potential additional parties, discovery scope and timing, contemplated motions, settlement and ADR, jury vs. bench trial election, estimated trial length, trial counsel, and the issue of consenting (or not) to a Magistrate Judge.

This Joint Rule 26(f) Report is submitted as the product of that meeting

**Plaintiff's Brief Statement of the Case (4(a)**

**Plaintiff respectfully requests permission to extend her factual summary beyond one page in order to provide the Court with relevant facts against each of the 15 defendants.**

Plaintiff Linda Veerkamp alleges that the nonjudicial foreclosure sale of her home at 18320 Regina Avenue, Torrance, California, was void. Multiple Defendants participated in or benefitted from an unlawful, sham, and procedurally defective foreclosure process. The foreclosure could not have happened. It was set up take advantage of a 62 year old unemployed woman who managed to have fully paid off her home and have over $700,000 in equity. She had always paid back her loans. In 2024 the defendants forced her into foreclosure and set up a

phony Trustee sale—and told her that her 1.2 million dollar house had been sold at the auction for $444,000 wiping out everything she had. She was evicted and put out on the street by another defendant and has been diagnosed with Post Traumatic Stress Syndrome and a Bi-Polar personality disorder. She is homeless.

The defendant who foreclosed didn't have a license and was prohibited by State and Federal law from foreclosing. Each and every defendant took a fee and never did any checking on the originator.

The plaintiff was induced into entering a high-risk loan arrangement originated and brokered through EQUITY Funding Source, Inc. and funded by Defendant Ronald Perlstein. Perlstein holds ONLY a DRE Real Estate Salesperson License. That license — by statute — does NOT authorize mortgage lending, mortgage servicing, loan origination, loan collection, loan enforcement, or foreclosure authority. **Bus. & Prof. Code § 10131(d) & (e)**

These sections define what a broker MAY do: (d) arrange loans for compensation (e) collect payments for compensation. **But both require one thing Perlstein never had: A Mortgage Loan Originator (MLO) endorsement.**

He needed an MLO endorsement — he never had one. Bus. & Prof. Code § 10166.02 (SB 36 / SAFE Act)  This law makes it illegal to: make, arrange, service, enforce, or negotiate a residential mortgage loan without an MLO endorsement.

Perlstein did all of the following which are restricted without the MLO. Met Linda in person, → 10166.01(d)(1) Negotiated terms → 10166.01(b) Set the interest → 10166.01(e) Demanded 6 months upfront → Regulated act: compensation  Serviced her payments → 10166.01(e) Collected late fees → MLO restricted activity Declared her in default → enforcement = MLO act and Initiated foreclosure → prohibited without MLO license Under §10166.02: He was prohibited from doing all of this. A person without an MLO endorsement may not originate or service a mortgage loan.

**He also needed a DFPI finance lender license — he didn't have one---**   Separate from the MLO requirement: California Finance Lenders Law **— Financial Code § 22100 Requires a DFPI license to: make consumer loans, service loans, collect, or enforce loans secured by 1– 4 unit residential property. Perlstein: had no DFPI license**, had no exemption, and therefore had no authority to fund or enforce this loan.

Financial Code §22100(a): "No person shall engage in the business of a finance lender without obtaining a license."  He engaged in that business. He was unlicensed. Everything he did was illegal. This case is about a home taken through **fraud, not foreclosure**. The defendants did not hold an auction. They did not gather bidders. They did not conduct a sale. They simply wrote documents saying they did — and then used those documents to force a 62-year-old woman out of her paid-in-full home. What happened to Linda Veerkamp was not a "mistake." It was not "bad paperwork." It was the **forced removal of a homeowner** based entirely on a sale that **never occurred**. If there was **no sale**, there can be **no deed**, no transfer, no eviction, and no loss of title.

Plaintiff contends that the loan and foreclosure structure unlawfully used a self-directed retirement plan and profit-sharing plan mechanics, which she alleges were inconsistent with applicable Internal Revenue Code provisions, IRS Notice 2004-8, and industry standards for self-directed IRAs and profit-sharing plans. She alleges that the plan's

structure and use of Entrust Group's custodial services were designed to evade regulatory requirements and conceal who truly held beneficiary and decision-making authority.

Plaintiff alleges that Western Fidelity Trustees and Kathleen Herrera did not conduct a legitimate trustee's sale under Civil Code § 2924, but instead fabricated or misrepresented that a public auction had occurred on or about May 9, 2024. She alleges there was no genuine competitive bidding and that trustee's sale documentation and recitals are false or misleading.

Plaintiff alleges that Defendants Adam Garasad, Sam Ostayan, and Fleet Capital, Inc. did not lawfully bid at any actual trustee's sale, but were instead pre-selected or coordinated purchasers who relied on a defective and void Trustee's Deed Upon Sale. She alleges that Garasad admitted to using a fictitious entity or alternate identity in connection with the purchase. The recorded Trustee's Deed is void because title was taken by or through a non-existent or fictitious entity.

Plaintiff alleges that The Entrust Group, Inc., Farmers & Merchants Bank, Story Investments, and others concealed material assignments, transfers, and beneficiary relationships, including from the United States Bankruptcy Court during her prior Chapter 13 case. She contends that misrepresentations and omissions in relief-from-stay filings and related proceedings misled the court into allowing foreclosure activity that otherwise would have been prohibited or scrutinized.

Plaintiff further alleges that the post-foreclosure unlawful detainer proceedings, including the resulting judgment and appeal, did not adjudicate or resolve the alleged fraud, misconduct, and voidness issues, and that the unlawful detainer judgment cannot act as res judicata to bar her present claims because the prior court lacked jurisdiction or did not consider the fraud and plan-related issues she raises here.

Plaintiff seeks declaratory relief that the Trustee's Deed Upon Sale is void, damages for fraud and related torts, statutory damages and civil penalties, punitive damages, emotional distress damages, attorneys' fees and costs, and any further equitable remedies necessary to restore or compensate her for the loss of her home and equity.

Plaintiff denies Defendants' defenses and reserves all rights to amend and supplement.

---

### Fidelity National Title Company & Vicky Ezell — Brief Statement (4(a)) (Sinny B. Thai):

Plaintiff Linda Veerkamp, a real estate agent, obtained a loan secured by a Deed of Trust ("Perlstein DOT") in favor of Defendant Ronald Perlstein as the lender. Pursuant to the terms of the Perlstein DOT, Plaintiff pledged the property located at 18320 Regina Avenue, Torrance, California 90504 ("Property") as security for repayment of a loan in the sum of $370,000.00. Defendant Fidelity National Title Company ("Fidelity") issued a policy of title insurance to insure the Perlstein DOT as a valid lien on the Property. Defendant Vicky Ezzell was employed

as the title officer for Fidelity for the underlying issuance of title insurance for the Perlstein DOT. Due to Plaintiff's default on repayment of the loan, Defendant Perlstein foreclosed on the Property. Plaintiff alleges that the Property was wrongfully foreclosed and asserts that Ezzell "contributed to the fraudulent foreclosure . . . by failing to discharge her duty to maintain accurate and complete title records." Defendant Fidelity and Ezzell has filed a motion to dismiss the First Amended Complaint pursuant to FRCP 12(b)(6) which is pending before the Court.

---

**Western Fidelity Trustees & Kathleen Herrera — Brief Statement (4(a)) (Schachter):**

Western Fidelity Trustees and Kathleen Herrera deny any fraudulent or improper conduct. They maintain that they acted solely as foreclosure trustee under a deed of trust in accordance with California Civil Code section 2924 et seq., that they issued and recorded all required default and sale notices, and that the trustee's sale was conducted in compliance with the statutory scheme. They dispute Plaintiff's allegations that the sale was fabricated, that they lacked authority to proceed, or that any irregularity occurred that would render the sale void or voidable.

---

**Farmers & Merchants Bank of Long Beach — Brief Statement (4(a)) (Leight):**

Farmers & Merchants Bank ("F&M") is a former beneficiary or lender with respect to a loan involving Plaintiff. F&M contends that it assigned its interest to Story Investments, LLC, and that any later foreclosure of Plaintiff's property was conducted by and for other parties under a different deed of trust. F&M denies that it directed or controlled any of the challenged foreclosure actions, denies liability for Plaintiff's alleged harm, and contends that the claims against it are frivolous and vexatious. F&M further asserts that it has incurred attorneys' fees in the amount of $28,776.00 and litigation costs of $275.59 as of the date of its disclosures, which it will seek to recover as permitted by law and contract if it is the prevailing party.

**Equity Funding Source, Inc. & Judith Krug — Brief Statement (4(a)) (Endman):**

Equity Funding Source, Inc. and Judith Krug deny Plaintiff's allegations and dispute any claim that they engaged in wrongful conduct. They contend that any loan origination activities were performed lawfully under applicable licensing and regulatory provisions and that they did not participate in, direct, or control the foreclosure sale or post-foreclosure events that are the focus of Plaintiff's complaint. They assert no affirmative claims for damages at this time and reserve all defenses.

**Defendants Adam Garasad, Sam Ostayan, and Fleet Capital, Inc. — Brief Statement (4(a)) (Garson):**

Below is Defendants Ostayan, Fleet Capital Inc., and Garasad ("Defendants") brief statement pursuant to Paragraph 4(a) of the Court's Standing Order.

This is a wrongful foreclosure case where the borrower challenges a foreclosure of her property to bona fide third-party purchasers. Due to Plaintiff's default on repayment of the loan, Defendant Perlstein foreclosed on the Property. Plaintiff alleges that the foreclosure was improper, and that Defendants Ostayan, Fleet Capital Inc., and Garasad ("Defendants") illegally bid on the property at a non-judicial foreclosure sale.

Plaintiff has already lost a fully litigated unlawful detainer case and subsequent appeal of that case. Key legal issues for Defendants include: the third-party purchaser's status as a bona fide purchaser; the res judicata effect of the final unlawful detainer judgment; and the regularity of the trustee's sale. Defendants have filed a motion to dismiss the First Amended Complaint pursuant to FRCP 12(b)(6) which is pending before the Court.

**Defendants Ronald Perlstein, Ronald Perlstein as Trustee of the Ronald Perlstein Profit Sharing Plan, and Story Investments, LLC — Factual Summary of the Case (4(a))**
Defendants Ronald Perlstein, Ronald Perlstein as Trustee of the Ronald Perlstein Profit Sharing Plan, and Story Investments, LLC deny all material allegations of the First Amended Complaint and contend that they acted at all times in good faith and in full compliance with California law.    The subject dispute arises from a residential loan that was originated and brokered by Equity Funding Source, Inc., a licensed California real estate broker with an active Mortgage Loan Originator (MLO) endorsement, which dealt directly with the borrower in taking the application and negotiating the loan terms.  Mr. Perlstein and his related entities participated solely as investors by providing the loan funds and acquiring the resulting promissory note and deed of trust; they did not solicit the borrower, take the loan application, or negotiate loan terms. Although Mr. Perlstein has been a licensed California real estate broker in good standing for more than forty years (California Broker License No. 00466624), he did not act in a brokerage or MLO capacity in connection with this loan and instead functioned only as the capital source and noteholder.

Because the origination activities were performed by Equity Funding Source, Inc. under its broker's license and MLO endorsement, the loan was lawfully originated under California's Real Estate Law and SAFE Act framework.  In his role as an investor-lender, Mr. Perlstein was not required to obtain a separate MLO endorsement or finance-lender license, as he did not engage in the regulated acts of taking a residential mortgage application or offering or negotiating loan terms for compensation or gain.  Any compensation received by Mr. Perlstein was in the form of interest and lender charges on his invested capital, consistent with a customary investor yield rather than a brokerage commission.

To the extent Plaintiff claims Mr. Perlstein was not duly licensed to loan his money, the loan was made lawfully under *Business and Professions Code* §§ 10131(d) and 10131.1, which authorize licensed real-estate brokers to make or arrange loans secured by real property using their own funds.  Because Mr. Perlstein funded the loan entirely with his own capital and acted in the capacity of a principal lender—not as an intermediary placing or arranging money for third parties—his conduct fell squarely within the scope of his broker's license and did not require any separate finance-lender or mortgage-loan-originator licensing.  Under § 10131.1, "own funds" means the broker's or broker-entity's capital and expressly excludes third-party investor money, demonstrating that the statutes were designed to distinguish principal lending from brokered transactions involving others' funds.  Likewise, the MLO endorsement provisions in *Business and Professions Code* §§ 10166.01–10166.02 do not apply to principal lenders using their own money, since the statute regulates only those who take applications or negotiate loan terms "for compensation or gain" on behalf of another lender, not those earning a standard lender's return on their own capital.  Finally, DRE-Licensed Brokers loaning their own funds are exempt from the California Financing law pursuant to *Financial Code* § 22057.

After the borrower's default, Western Fidelity Trustees was retained to handle all foreclosure-related services in accordance with California's nonjudicial foreclosure statutes (Civ. Code §§ 2924 et seq.).  Mr. Perlstein relied entirely on Western Fidelity's professional expertise to prepare, record, and conduct the foreclosure proceedings and did not direct or personally supervise the technical aspects of the sale.  He has never questioned Western Fidelity's professionalism or the propriety of its actions.

Following the trustee's sale, Mr. Perlstein had no contact, knowledge, or relationship of any kind with the subsequent purchasers or occupants of the property.  He did not participate in the bidding, selection, or transfer of title, and no evidence exists that he conspired or communicated with any buyer involved in the post-foreclosure acquisition.

In sum, Equity Funding Source, Inc. lawfully originated and brokered the loan under its broker/MLO authority, and Mr. Perlstein's role was limited to that of an investor and noteholder.  The loan and subsequent foreclosure were conducted in compliance with California law, and no act or omission by Mr. Perlstein or his entities constitutes fraud, unauthorized lending, or other wrongful conduct. Defendants reserve all rights to seek recovery of attorneys' fees, costs, and any other appropriate relief as prevailing parties.

---

**The Entrust Group, Inc. — Brief Statement (4(a)) (Placeholder):**

**[ENTRUST GROUP, INC. 4(a) BRIEF STATEMENT OF THE CASE TO BE INSERTED HERE UPON RECEIPT FROM ENTRUST'S COUNSEL.]**

---

Defendant The Entrust Group's Standing Order 4(a) Brief Statement:
A fatal flaw to each and every one of the complaints allegations against The Entrust Group Inc. is that the funds alleged to have been loaned to plaintiff by Mr. Perlstein came from his Profit Sharing Plan. By the Plan, Mr. Perlstein is the Plan Administrator. The Plan is selftrusteed meaning that Mr. Perlstein directly manages and makes all decisions about the Plan's assets, including investment choices and overseeing the Plan's business. Entrust does not make or hold any decision-making power over assets held by the Plan. The Internal Revenue Code Provisions alleged by the complaint regarding management and control of the Plan have no application. Entrust demands that the complaint be dismissed as to it

**(b) The basis for the Court's subject-matter jurisdiction.**

Plaintiff asserts that this Court has subject-matter jurisdiction based on:

1. **28 U.S.C. § 1331 (Federal Question Jurisdiction):**
   Plaintiff alleges that certain claims and issues arise under federal law or require substantial interpretation of federal law, including alleged misuse of a profit-sharing plan and self-directed retirement structures that implicate federal tax and regulatory frameworks.
2. **28 U.S.C. § 1334(b) (Bankruptcy-Related Jurisdiction):**
   Plaintiff alleges that the foreclosure and related conduct were "related to" her prior Chapter 13 bankruptcy proceedings and that misrepresentations and nondisclosures in the bankruptcy relief-from-stay process form part of the factual basis for her claims.
3. **28 U.S.C. § 1367 (Supplemental Jurisdiction):**
   Plaintiff alleges that the state-law causes of action arise from the same nucleus of operative fact as the federal and bankruptcy-related issues and are therefore within the Court's supplemental jurisdiction.
4. **There are issues regarding violations of the stay Order and ERISA that should be resolved by this Trial Court.**

**Defendants' Position on Jurisdiction:**
Certain Defendants, including Perlstein and related entities, do **not** agree that the District Court has subject-matter jurisdiction over all of Plaintiff's claims and theories. They reserve all rights to challenge jurisdiction, including arguments that Plaintiff's references to ERISA, IRS rules, or bankruptcy issues do not create federal question jurisdiction and that some or all claims should be remanded or dismissed. Other Defendants, including some removing Defendants, acknowledge that removal has occurred but likewise reserve all objections and defenses regarding subject-matter jurisdiction.

---

**(c) A brief description of the key legal issues.**

**Plaintiff's Key Legal Issues:**

Plaintiff identifies the following key legal issues, among others:

1. Whether the foreclosure sale was **void**, rather than merely voidable, due to an absence of lawful beneficiary authority, improper plan and custodial structure, and use of fictitious or unauthorized entities in the transfer of title.
2. Whether the profit-sharing plan and self-directed retirement structure used to fund and hold the beneficial interest in the loan violated federal tax and regulatory rules, IRS Notice 2004-8, and related guidance such that the foreclosure and related acts were unauthorized.

3. Whether The Entrust Group, Inc., as custodian of the self-directed account, had duties to monitor, supervise, or restrict the plan-holder's transactions, and whether any failure to do so contributed to an unlawful foreclosure.

4. Whether Western Fidelity Trustees and Kathleen Herrera properly conducted a trustee's sale in accordance with California Civil Code § 2924 et seq., including proper notice, authority, and actual public auction bidding, or instead fabricated sale events and recitals.

5. Whether Farmers & Merchants Bank, Story Investments, and others concealed assignments, transfers, or lien activity from Plaintiff and from the Bankruptcy Court, causing the court to be misled in granting relief from stay and thereby depriving Plaintiff of a meaningful chance to cure or contest her obligation.

6. Whether the Trustee's Deed Upon Sale and subsequent instruments are void as a matter of law due to reliance on fictitious entities, fraud, misrepresentations, and lack of a genuine trustee's sale.

7. Whether the unlawful detainer judgment and related appellate proceedings bar or limit Plaintiff's present claims, or whether they can be collaterally attacked due to extrinsic fraud or lack of jurisdiction.

8. Whether Plaintiff is entitled to rescission, declaratory relief restoring or quieting title in her favor, economic and non-economic damages, statutory penalties, punitive damages, and attorneys' fees and costs.

**Defendants' Key Legal Issues (including Yourist's requested additions):**

Defendants identify, among others, the following legal issues:

1. Whether the foreclosure complied with California's nonjudicial foreclosure statutes (Civ. Code § 2924 et seq.), and whether the statutory presumption of regularity and recitals in the Trustee's Deed Upon Sale bar Plaintiff's claims.

2. Whether Plaintiff must and has failed to tender the amount of the indebtedness as a prerequisite to any equitable attack on the sale.

3. Whether Plaintiff's ERISA-, IRS-, or plan-based theories state any cognizable claim or provide any private right of action against these Defendants.

4. Whether the litigation privilege, res judicata, collateral estoppel, or other preclusion doctrines bar some or all of Plaintiff's claims.

5. Whether Plaintiff can meet the particularity requirements of Rule 9(b) as to fraud-based claims, including identifying specific false statements, reliance, and damages.

6. Whether any Defendant outside the direct foreclosure chain—such as F&M after assignment, title/escrow entities, or Entrust as custodian—owed any legal duty to Plaintiff under the facts alleged.

7. **Perlstein/Story/Plan-Specific Issues (per Yourist's email):**
   o Whether Perlstein's loan—funded entirely with his own capital as a principal lender—was fully authorized under his broker's license and exempt from any mortgage-loan-originator (MLO) or finance-lender requirements.
   o Whether the foreclosure complied with California's nonjudicial foreclosure statutes (Civ. Code § 2924 et seq.) where all notices, substitutions, and trustee's actions were performed by Western Fidelity Trustees and presumed valid under the statutory presumption of regularity.

- o Whether Defendants owed any legal duty to, or had any agency or conspiratorial relationship with, the third-party purchasers at the trustee's sale, where Perlstein had no knowledge of, contact with, or involvement in their bidding or acquisition.
- o Whether Plaintiff can establish any actionable misrepresentation by Defendants, where all communications and foreclosure actions were handled by Western Fidelity Trustees and no false statements or concealment are attributed to Perlstein.
- o Whether the Profit Sharing Plan's investment in a deed-of-trust loan complied with plan documents and industry-standard custodial procedures, defeating Plaintiff's claims of unauthorized plan activity.
- o Whether Plaintiff has standing to challenge assignments or substitutions of trustee despite California's rule that borrowers lack standing to attack third-party transfers unless they show prejudice or voidness.
- o Whether Plaintiff can prove recoverable damages where she was in long-term loan default, the statutory notices were properly issued, and no compensable equity or use interest existed at the time of sale.
- o Whether Plaintiff's claims constitute an impermissible collateral attack on a completed trustee's sale that was conducted in compliance with California's statutory scheme.

All parties reserve their rights to refine and supplement their legal issues.

---

**(d) The realistic range of probable damages.**

**Plaintiff's Damages Contentions:**

Plaintiff contends that the realistic range of probable damages includes:

1. **Loss of equity and home value:** She alleges she lost a home worth approximately $1.2 million with more than $700,000 in equity at the time of the foreclosure, and seeks compensation for her equity loss and/or the value of the property itself.
2. **Economic damages:** Including relocation expenses, storage costs, moving costs, increased housing costs, and expenses associated with displacement from her home and community.
3. **Emotional distress damages:** Plaintiff alleges that the foreclosure, eviction, and related litigation caused severe emotional distress given her mental health vulnerabilities.
4. **Statutory damages and civil penalties:** Including potential remedies under California Civil Code provisions governing trustee's sales, reconveyances, and consumer protections, and any applicable unfair competition or consumer protection statutes.
5. **Punitive damages:** Against certain Defendants based on allegations of fraud, malice, oppression, and willful misconduct.
6. **Attorneys' fees and costs:** Under contract and/or statute for prevailing party and consumer-protection-based fee provisions.

**Defendants' Damages Contentions:**

- Defendants dispute that Plaintiff had the equity and property value she claims, dispute the availability of emotional distress and punitive damages in this context, and contend that any alleged damages are speculative or caused by Plaintiff's own default.
- F&M specifically identifies its own attorneys' fees of $28,776.00 and costs of $275.59, which it seeks to recover as a prevailing party.
- EFS and some other Defendants assert no damages or affirmative claims.
- The buyer Defendants (Garasad/Ostayan/Fleet) contend Plaintiff suffered no legally cognizable damages from their bona fide purchaser acquisition and assert that any claimed loss flows from Plaintiff's default and the trustee's sale, not from their conduct.

---

**(e) The likelihood of appearance of additional parties.**

Plaintiff anticipates 1-2 additional parties being added and reserves the right to add more  if discovery reveals further transferees, hidden beneficiaries, or other participants in the alleged fraudulent foreclosure chain and plan structure. The attorney representing Adam Garasad, Katherine Meleski, filed a Verified Complaint and her client claimed under oath that he personally attended the auction on May 9, 2024 and he placed the winning bid. Attorney Meleski filed another declaration confirming that a Sam Ostayan  was the man who personally went to the same auction on May 9, 2024. On September 4, 2024 she confirmed that her client Adam Garasad did not attend the auction and did not bid on the plaintiff's home. Meleski presented evidence  that she contended proved that Sam Ostayan was at the auction on May 9.

On July 9 she claims under oath that Adam Garasad was at the auction on May 9th, and on September 4 she claims that Sam Ostayan was  at the auction on May 9. She places Sam at the auction on May 9 and two months later she filed a verified complaint stating that Adam Garsad was there on May 9. This attorney knew that no auction took place and she confused the parties and the court. She also sent out a Proof of service dated November 5, 2024 for a judgment for summary judgment that took place on November 26. That was impossible and void on its face.
        The Complaint should be amended to add her.

Defendants F&M, Fidelity/Ezell, Western/Herrera, Equity Funding/ Krug, the buyer Defendants (Garasad/Ostayan/Fleet), and Perlstein/Story/Plan do not presently anticipate adding additional parties. All parties reserve their rights to seek leave to add cross-defendants or third-party defendants if facts later support indemnity, contribution, or related claims.

---

**(f) Whether all or part of the procedures of the Manual for Complex Litigation should be utilized.**

The parties jointly state that they do **not** request the use of the Manual for Complex Litigation at this time. Although the case involves multiple parties and intersecting issues (foreclosure, title,

plan structure, bankruptcy, and unlawful detainer history), the parties believe it can be managed under the Federal Rules of Civil Procedure and Local Rules, with case-management orders tailored by the Court if necessary.

---

**(g) A proposed discovery cut-off date.**

The parties differ somewhat in their proposed discovery timeline:

- **Plaintiff's Proposal:**
  - Fact discovery cutoff: 120 days after the Scheduling Conference.
  - Expert discovery cutoff: 165 days after the Scheduling Conference.
- **Defendants' Proposal:**
  - Several defense groups propose a substantially longer period, in the range of 240–300 days for fact discovery, citing the number of parties, complexity of issues, anticipated expert discovery, and intertwining of foreclosure, bankruptcy, and title issues.
  - Certain Defendants (including Fidelity/Ezell and the buyer Defendants) have specifically referenced completing written discovery to Plaintiff—including Special Interrogatories, Requests for Production, and Requests for Admission—by **August 31, 2026**.

The parties request that the Court set a discovery cut-off date consistent with its standard practices, taking into account the number of parties and the complexity of issues.

---

**(h) What motions (other than discovery motions) are contemplated.**

**Plaintiff's Anticipated Motions:**

1. Motion for Summary Judgment or Partial Summary Judgment on the issues of voidness of the foreclosure sale, lack of lawful beneficiary, and invalidity of the Trustee's Deed Upon Sale.
2. Motion to Amend  to add Attorney Meleski and firm/employer as party defendants.
3. Motions to strike certain affirmative defenses, including tender requirements, litigation privilege assertions, and any defenses Plaintiff contends are unsupported as a matter of law.
4. Motions in limine prior to trial to exclude irrelevant or unduly prejudicial evidence relating to prior evictions, unrelated financial issues, or Plaintiff's personal history not tied to her claims.
5. Motions for sanctions or other relief if discovery reveals willful nondisclosure or misrepresentation in prior bankruptcy, foreclosure, or unlawful detainer proceedings.

**Defendants' Anticipated Motions:**

1. Motions to dismiss or for judgment on the pleadings, including motions under Rule 12(b)(6) challenging Plaintiff's ERISA-adjacent theories, plan-based claims, fraud allegations, and bankruptcy-related claims.
2. Motions for summary judgment by multiple Defendants, including the buyer Defendants and Perlstein/Story/Plan, based on presumptions of regularity (Civ. Code § 2924), lack of duty, lack of causation, preclusion, and the argument that Plaintiff was in default with no equity or prejudice.
3. Motions to strike punitive damages and certain categories of emotional distress or statutory damages if Defendants contend they are unsupported or unavailable as a matter of law.
4. Motions in limine to exclude evidence deemed irrelevant, speculative, or unduly prejudicial.
5. **Perlstein's Requested MSJ Statement (per Yourist):**
   "Perlstein anticipates filing a Motion for Summary Judgment on the grounds that the undisputed evidence establishes he lawfully made the loan under his California real-estate broker's license using his own capital as a principal lender—rendering the transaction fully authorized under Business and Professions Code §§ 10131(d) and 10131.1 and exempt from any mortgage-loan-originator or finance-lender requirements as a matter of law."
6. [Deft. Garasad et al.,: third-party purchaser's status as a bona fide purchaser, the regularity of the non-judicial foreclosure sale, and the res judicata effect of the final unlawful detainer judgment]

All parties reserve the right to bring additional motions as appropriate.

---

**(i) Prospects of settlement based on counsel's discussion at the Rule 26(f) meeting and any other communications.**

At the Rule 26(f) meeting, the parties discussed settlement generally:

- **Plaintiff's Position:**
  Plaintiff is open to early mediation or settlement efforts, preferably after limited initial discovery sufficient to clarify key factual issues (trustee's file, plan documents, assignments, and recorded instruments). Plaintiff believes early ADR could be efficient because several Defendants are institutional or insured parties.
- **Defendants' Positions:**
  - Fidelity/Ezell and Western/Herrera are amenable to participating in court-supervised ADR or mediation before a Magistrate Judge or panel mediator.
  - F&M does not rule out settlement but believes its liability is remote.
  - Equity Funding/ Krug has no present settlement posture but will evaluate as the case progresses.
  - The buyer Defendants (Garasad/Ostayan/Fleet) are currently **not** amenable to mediation and prefer to seek dismissal or summary judgment.

o  Perlstein/Story/Plan and Entrust prefer to revisit ADR after the pleadings and threshold motions (e.g., 12(b)(6) and summary judgment) narrow the issues, but they do not rule out future mediation if warranted.

Overall, some Defendants prefer ADR later in the case, while Plaintiff prefers a relatively earlier mediation.

---

**(j) Whether the trial will be a court or jury trial.**

Plaintiff has demanded a **jury trial** on all issues so triable. Defendants likewise request a jury trial where available and do not seek a bench trial. The parties therefore anticipate a **jury trial** in this matter.

---

**(k) The estimated length of trial.**

- **Plaintiff's Estimate:** Approximately 8–10 court days.
- **Defendants' Estimates:** Approximately 7–15 court days, depending on which claims and parties remain after motion practice and how many witnesses and experts are allowed.

The parties agree trial will take at least one full week and likely longer.

---

**(l) The name of the attorney(s) who will try the case.**

The attorneys identified in Section 2 are presently expected to try the case:

- Plaintiff: Steven W. O'Reilly
- The Entrust Group, Inc.: Charles Berwanger
- Farmers & Merchants Bank: Michael Leight
- Adam Garasad, Sam Ostayan and Fleet, Inc. Natalie Garson
- Fidelity/Ezell: Sinny B. Thai
- Perlstein/Profit Sharing Plan/Story: Dan Yourist
- Equity Funding/Krug:  Jonathan Endman
- Western Fidelity Trustees/Herrera: Robert Schachter

Each party reserves the right to designate co-trial counsel as appropriate.

---

**(m) Prospects of counsel exercising their right, under 28 U.S.C. § 636, to consent to the designation of a Magistrate Judge to conduct all proceedings (including trial) and final disposition, pursuant to General Order 05-07 (also referenced as General Order 194).**

There is no unanimous consent at this time. Plaintiff does not consent to full Magistrate jurisdiction and wishes to remain before Judge Marshall. Some Defendants may be open to consenting in principle, but others (including the buyer Defendants) do not consent. Because unanimity is lacking, the case will remain assigned to the District Judge.

---

## 5. Mandatory Settlement Procedure:

In conformity with the Local Rules, counsel shall file the settlement procedure selection by the date given by the Court at the time of the Scheduling Conference. Available alternatives for consideration, not to the exclusion of others, include:

(1) a settlement conference before the district judge or magistrate judge assigned to the case;

(2) a settlement conference or mediation before an attorney selected from the Attorney Settlement Panel (list available from the Court's website); or

(3) the employment by the parties of a private judge, mediator or arbitrator. See L.R. 16-15.

**Joint Statement:**
The parties will timely file the settlement procedure selection as required. Plaintiff currently favors mediation either before a Magistrate Judge or panel mediator. Certain Defendants prefer ADR to follow partial resolution of dispositive motions. The buyer Defendants presently do not favor ADR but will comply with any Court-ordered settlement procedure.

---

## 6. Discovery:

All discovery matters have been referred to a Magistrate Judge, who will hear all discovery disputes. (The Magistrate Judge's initials follow the District Judge's initials next to the case number.) All discovery documents must include the words "DISCOVERY MATTER" in the caption to ensure proper routing. Please do not deliver courtesy copies of discovery documents to the District Judge.

**Joint Statement:**
The parties acknowledge that discovery matters are referred to the assigned Magistrate Judge and agree to label all discovery filings "DISCOVERY MATTER" in accordance with the Standing Order and Local Rules. They will not send discovery motion courtesy copies to Judge Marshall unless specifically directed.

The parties anticipate written discovery (interrogatories, requests for production, requests for admission), depositions of Plaintiff, key bank and trustee personnel, plan and custodial representatives, and third-party purchasers, as well as expert discovery regarding foreclosure practices, plan structures, and damages.

---

## 7. Motions:

### a. Time for Filing and Hearing Motions:

Motions shall be filed in accordance with Local Rules 6 and 7. Local Rule 6-1 provides: "The notice of motion shall be filed with the Clerk not later than twenty-eight (28) days before the date set for hearing, and shall be served on each of the parties electronically or, if excepted from electronic filing, either by deposit in the mail or by personal service." This Court typically hears motions on TUESDAYS, beginning at 10:00 a.m. The briefing schedule for the motion shall be governed by Local Rules 6 and 7. No supplemental brief shall be filed without prior leave of Court.

Adherence to deadlines is mandatory for chambers' preparation of motion matters.

### b. Pre-filing Requirement:

Counsel should take note of Local Rule 7-3, which requires "counsel contemplating the filing of any motion" to "first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." Counsel should discuss the issues sufficiently that if a motion is still necessary, the briefing may be directed to those substantive issues requiring resolution by the Court. Counsel should resolve minor procedural or other non-substantive matters during the conference.

### c. Length and Format of Motion Papers:

Pursuant to Local Rule 11-6, Memoranda of Points and Authorities in support of or in opposition to motions shall not exceed twenty-five (25) pages, absent leave of Court. Replies shall not exceed ten (10) pages. Only in rare instances and for good cause shown will the Court grant an application to extend these page limitations.

Pursuant to Local Rule 11-8, all Memoranda of Points and Authorities exceeding ten (10) pages must be accompanied by a Table of Authorities and a Table of Contents.

Footnotes shall be in typeface no less than two sizes smaller than text size (e.g., if text size is 14, font size shall be no smaller than 12) and shall be used sparingly.

References to documents or evidence filed with the Court shall include a citation to the appropriate docket number and a pin cite.

Filings which do not conform to the Local Rules and this Order may be stricken.

### d. Requests for Judicial Notice:

Parties requesting judicial notice shall identify the adjudicative fact(s) for which it seeks notice pursuant to Federal Rule of Civil Procedure 201.

**e. Motions In Limine:**

Motions in limine shall be noticed for hearing no later than the final pretrial conference date. No replies shall be filed, absent leave of Court.

**f. Under Seal Filings:**

Applications to file documents under seal shall comply with Local Rule 79-5.2, and shall identify the specific material with supporting legal authority (i.e., rule, statute and/or case law) to support a good cause showing. A protective order signed by the parties does not establish good cause to file documents under seal with the Court. For additional information regarding under seal filings, see: https://www.cacd.uscourts.gov/e-filing/sealed-documents.

**Joint Statement:**
The parties acknowledge and agree to comply with these requirements. They will conduct LR 7-3 conferences in good faith and will structure their briefing consistently with the page limits, format, and citation requirements.

## 8. MANDATORY Courtesy Copies:

Pursuant to General Order 08-11 and Local Rule 11-3, and unless otherwise ordered by the Court, mandatory chambers copies of all filed documents, including Ex Parte or Temporary Restraining Order documents, must be delivered to the courtesy copy boxes next to the Customer Service window, at 350 W. 1st Street, Attention: Yolanda Skipper, on the 4th floor of the U.S. Courthouse, no later than 12:00 noon the following business day. The mandatory chambers copy must be prominently labeled CHAMBERS COPY on the face page. The mandatory chambers copy of all electronically filed documents must include the Notice of Electronic Filing as the last page of the document. Failure to timely supply courtesy copies of papers may result in the hearing being taken off calendar.

**Joint Statement:**
The parties acknowledge and will comply.

## 9. Proposed Orders:

Each party filing or opposing a motion or seeking the determination of any matter shall serve and lodge a Proposed Order setting forth the relief or action sought and a brief statement of the rationale for the decision with appropriate citations. A party objecting to evidence shall similarly lodge a Proposed Order setting forth the specific evidence and basis for the objection(s). All

Proposed Orders shall be submitted via e-mail to cbm_chambers@cacd.uscourts.gov in
Microsoft Word format. Where applicable, parties shall comply with Local Rules 52 and 58.

**Joint Statement:**
The parties acknowledge and will comply with these requirements for proposed orders, including
submission in editable Word format to chambers

## 10. Ex Parte Applications:

Counsel are reminded ex parte applications are solely for extraordinary relief. Applications that
do not meet the requirements set forth in Local Rules 7-19 will not be considered. The Court
considers ex parte applications on the papers and usually does not set these matters for hearing.

**Joint Statement:**
The parties acknowledge ex parte applications are disfavored and shall be used only in
extraordinary circumstances and in strict compliance with Local Rules 7-19 and the Standing
Order.

## 11. Continuances:

Counsel requesting a continuance must lodge — prior to the date to be continued — a Proposed
Stipulation and Order including a detailed declaration of the grounds for the requested
continuance or extension of time. The Court grants continuances only upon a showing of good
cause, focusing on the diligence of the party seeking the continuance and any prejudice that may
result if the continuance is denied. Failure to comply with the Local Rules and this Order may
result in denial of the request for continuance.

**Joint Statement:**
The parties acknowledge and will comply. They understand continuances are disfavored absent a
strong showing of diligence and good cause.

## 12. Communications with Chambers:

Counsel shall not attempt to contact the Court or its chambers staff by telephone or by any other
ex parte means, although counsel may contact the Courtroom Deputy, Yolanda Skipper, at:
yolanda_skipper@cacd.uscourts.gov, with appropriate inquiries. To facilitate communication
with the Courtroom Deputy, counsel should list their facsimile transmission numbers and email
addresses along with their telephone numbers on all papers.

**Joint Statement:**
The parties acknowledge and agree to comply. Communications with chambers will be through publicly filed documents or as otherwise permitted, with appropriate, limited email contact to the Courtroom Deputy when necessary.

---

## 13. Notice of this Order:

Counsel for the Plaintiff shall immediately serve this Order on all parties, including any new parties to the action. If this case came to the Court by noticed removal, the defendant shall serve this Order on all other parties.

### (c-1) Initial Disclosures (Rule 26(a)(1))

The parties have discussed their obligations under Rule 26(a)(1).

- **Plaintiff's Position:**
  Plaintiff has substantially prepared her initial disclosures and will serve them no later than **14 days after the Rule 26(f) conference**, absent a different schedule set by the Court.
- **Defendants' Position:**
  Defendants anticipate serving their Rule 26(a)(1) initial disclosures on or before the same deadline, but in any event no later than **14 days after the Rule 26(f) conference** or by the date ordered by the Court.

The parties agree that initial disclosures may be supplemented as required by Rule 26(e) as additional information becomes available through discovery.

---

### (c-2) Discovery & ESI Plan (Rule 26(f)(3))

**Subjects of Discovery**

The parties anticipate discovery on at least the following subjects:

1. Loan origination, underwriting, and escrow relating to the 2022 transaction involving Plaintiff's property at 18320 Regina Avenue, Torrance, California.
2. The structure, operation, and administration of any profit-sharing plan, SDIRA, or custodial account through which Defendant Perlstein or related entities funded or held the loan.
3. The nonjudicial foreclosure process, including all notices, substitutions of trustee, trustee's sale procedures, bidding, and post-sale conveyances.

4. Assignments, lien transfers, and communications with or among Farmers & Merchants Bank, Story Investments, and other financial entities regarding Plaintiff's loan and property.
5. Communications with, and filings made in, Plaintiff's prior Chapter 13 bankruptcy case relating to relief from stay and foreclosure authority.
6. The unlawful detainer proceedings, including the basis for the UD judgment, the use of the Trustee's Deed Upon Sale, and the scope of issues actually litigated.
7. Title, escrow, and closing practices, including HUD-1 preparation, fee structures, and any internal review or exception-handling by Fidelity, Equity Funding, and related entities.
8. Plaintiff's claimed damages, including property value, alleged equity, relocation and economic damages, and emotional distress.

Each side reserves the right to pursue additional, related discovery as facts develop.

**Written Discovery**

The parties anticipate the use of:

- Interrogatories under Rule 33
- Requests for Production under Rule 34
- Requests for Admission under Rule 36

No party presently requests deviation from the numerical limits in the Federal Rules, but the parties may stipulate to modest increases if necessary given the number of parties and issues.

**Depositions**

The parties anticipate depositions including, at a minimum:

- Plaintiff Linda Veerkamp
- One or more representatives of Western Fidelity Trustees and Kathleen Herrera
- One or more representatives of Farmers & Merchants Bank and Story Investments
- Defendant Ronald Perlstein and any plan or custodial representatives
- Buyer Defendants Adam Garasad, Sam Ostayan, and a Fleet Capital representative
- Representatives of The Entrust Group, Fidelity National Title, Equity Funding Source, and American Trust Escrow
- Experts designated by the parties on foreclosure practices, plan structures, and damages

The parties will confer in good faith regarding deposition scheduling and will seek to avoid duplication of testimony.

**ESI (Electronically Stored Information)**

The parties discussed ESI under Rule 26(f)(3)(C) and state as follows:

1. **Sources of ESI:**

- o Email servers and cloud accounts for counsel and party employees/agents involved in the loan, foreclosure, title, escrow, bankruptcy, and UD processes
- o Electronic loan files, trustee systems, and title/escrow platforms
- o Electronic bankruptcy filings and communications with bankruptcy counsel
- o Text messages and internal messaging platforms (to the extent used for case-related communications)

2. **Form of Production:**
   - o The parties agree in principle to produce ESI in **reasonably usable form**, including searchable PDFs or native files (e.g., .msg/.pst for emails, .xlsx for spreadsheets) with associated metadata where available.
   - o Load files or other structured productions may be used by agreement.

3. **Search & Collection:**
   - o The parties will identify relevant custodians and time periods and will meet and confer regarding reasonable search terms directed to the core issues (loan origination, foreclosure, trustee sale, plan structure, bankruptcy relief-from-stay, UD proceedings, and title/escrow handling).
   - o The parties will work cooperatively to avoid undue burden and to tailor searches to likely sources of relevant ESI.

4. **Preservation:**
   - o Each party represents that it has implemented reasonable litigation holds and suspended routine deletion practices for potentially relevant ESI, including email, electronic loan and foreclosure files, and internal communications regarding the
   - o subject property and transactions.

**Privilege, Work Product, and Clawback**

"The parties reserve the right to invoke privacy rights and confidentiality where appropriate to protect the affected interest by propounded discovery. It is anticipated that the parties will attempt in good faith to address any such issue by appropriate means including a confidentiality order."

The parties anticipate entering into a stipulation and proposed order under **Federal Rule of Evidence 502(d)** to allow for the clawback of inadvertently produced privileged or work-product material without waiver. They will meet and confer regarding a privilege log format and timing consistent with the Federal Rules and Local Rules.

Nov. 17, 2024.    By: /    s / Steven O'Reilly

Steven O'Reilly